**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, et al., | Civil Action No. 1:20-cv-10820-DPW |
| Plaintiffs, | |
| v. | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| Defendants, | |
| CHANTELL SACKETT; MICHAEL SACKETT, | |
| Proposed Defendant-Intervenors. | |

<u>**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE**</u>

Proposed Defendant-Intervenors Chantell and Michael Sackett ("the Sacketts") move to intervene as defendants under Federal Rule of Civil Procedure 24, to protect their significant interests in this litigation.

Plaintiffs Conservation Law Foundation, Connecticut River Conservancy, Clean Wisconsin, Massachusetts Audubon Society, Inc., Merrimack River Watershed Council, Natural Resource Defense Council, Inc., New Mexico Wilderness Alliance, and Prairie Rivers Network (together "Conservation Law Foundation") challenge the U.S. Environmental Protection Agency (EPA) and the U.S. Department of the Army's (Army) (together "the Agencies") adoption of a final rule called the Navigable Waters Protection Rule, defining "navigable waters" or "waters of the United States" under the Clean Water Act. ECF Nos. 1 and 19; *see* 85 Fed. Reg. 22,250 (Apr. 21, 2020) (the "Navigable Waters Protection Rule" or "Rule").

Case 1:20-cv-10820-DPW   Document 36-1   Filed 10/21/20   Page 2 of 20

The Sacketts seek to intervene to defend the portion of the rule which defines "adjacent wetlands." *See* 33 C.F.R. § 328.3(c)(1); 40 C.F.R. § 120.2(3)(i).[1] The Sacketts have an interest in the Clean Water Act's regulation of their private property, which would be affected by this lawsuit and is not adequately represented by the existing parties. Therefore, they are entitled to intervention as of right. Fed. R. Civ. P. 24(a). Alternatively, the Sacketts should be granted permissive intervention. Fed. R. Civ. P. 24(b).

## APPLICANTS

Chantell and Michael Sackett own a residential lot in Priest Lake, Idaho, that is the subject of an EPA jurisdictional determination and compliance order issued in 2008.[2] Declaration of Chantell Sackett ¶¶ 3–9, and Exhibits A & B thereto. EPA asserted that it had Clean Water Act authority over the lot because it contained "adjacent wetlands" under the regulations then in effect. *Id.* ¶ 7. EPA's administrative record of the jurisdictional determination establishes that the Sacketts' lot has no surface water connection to any other surface water and is separated from the closest surface water by an impermeable artificial barrier (a road with no culverts under it). *Id.* ¶¶ 3–4, 9, and Exhibits A & B.

The Sacketts' challenge to EPA's assertion of Clean Water Act authority over their lot was the subject of the Supreme Court of the United States' decision in *Sackett v. EPA*, 566 U.S. 120 (2012) (federal district courts have jurisdiction under the Administrative Procedure Act to review EPA compliance orders as final agency action). Following remand, the District of Idaho upheld EPA's assertion of regulatory authority, and EPA continues to maintain that the Sacketts' lot is

---

[1] Subsequent references to 33 C.F.R. § 328.3 and its subdivisions are, unless indicated otherwise, to the version published in the Federal Register on April 21, 2020, at 85 Fed. Reg. at 22,338–39, and the identical provisions at 40 C.F.R. § 120.2, published the same date at 85 Fed. Reg. at 22,340–41. 40 C.F.R. § 120.2(3)(i) corresponds to 33 C.F.R. § 328.3(c)(1).
[2] The compliance order was withdrawn earlier this year, but the jurisdictional determination remains in force.

regulable under the definition of "adjacent wetlands" in effect in 2008. Order, *Sackett v. EPA*, No. 2:08-cv-00185-EJL (D. Idaho Mar. 31, 2019), ECF No. 120. The Sacketts' appeal of that decision is currently pending in the Ninth Circuit, with briefing complete and oral argument set for November 19, 2020. *See* Notice of Oral Argument, *Sackett v. EPA*, No. 19-35469 (9th Cir. Sep. 6, 2020).

As a result of their ongoing legal dispute with EPA, the Sacketts have been unable to build a home on their residentially zoned vacant lot for the last thirteen years. Sackett Decl. ¶¶ 5–6, 10–12 (explaining that as long as EPA claims authority over their property, the Sacketts will be unable to build a house because they cannot afford an Army permit and because EPA's administrative record indicates that an Army permit for homebuilding would not be issued).

However, under the Navigable Waters Protection Rule's revised definition of "adjacent wetlands," the Sacketts' property is excluded from agency authority under the Clean Water Act. *See* 33 C.F.R. § 328.3(c)(1); Sackett Decl. ¶ 13. The lot's lack of surface water connection to any other surface water and its separation from the closest surface water by an impermeable artificial barrier (an elevated road) preclude Clean Water Act regulation under the new Rule. *See* 33 C.F.R. § 328.3(c)(1).

Conservation Law Foundation's challenge to the Rule, if successful, would reverse the exclusion of the Sacketts' property from Clean Water Act regulation and return the Sacketts' property to EPA's asserted regulatory dominion.

## BACKGROUND

### I.     The Clean Water Act and the Definition of "Navigable Waters"

The Clean Water Act, 33 U.S.C. § 1251, *et seq.*, regulates discharges of "pollutants" from "point sources" to "navigable waters." 33 U.S.C. §§ 1311(a), 1362(12). The Act defines

"navigable waters" as "waters of the United States, including the territorial seas." *Id.* § 1362(7). Although the Act defines "territorial seas," it does not otherwise define "waters of the United States." *Id.* § 1362(8).

Nonexempt discharges require a permit from either EPA or the Army, such as a "dredge and fill" permit under 33 U.S.C. § 1344. Obtaining a dredge and fill permit from the Army takes an average of more than two years and $250,000 in consulting costs. *See Rapanos v United States*, 547 U.S. 715, 721 (2006). Once obtained, a dredge and fill permit substantially limits how property encumbered by "navigable waters" can be used by its owner. *See generally* Daniel R. Mandelker, *Practicable Alternatives for Wetlands Development Under the Clean Water Act*, 48 Envtl. L. Rep. News & Analysis 10894 (Oct. 2018).

A person engaged in unpermitted, nonexempt discharges or permit violations faces citizen suits, administrative cease-and-desist and compliance orders, administrative penalties, civil actions for monetary penalties and injunctive relief, and criminal prosecution. *See generally Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 52-53 (1987). These severe burdens make it critically important that the regulated public know what is meant by "navigable waters."

There have been multiple attempts to define that term over the years. In 1986, the Army adopted an updated regulatory definition that stretched the term "navigable waters" to include all non-navigable wetlands "adjacent" (broadly defined as "bordering, contiguous, or neighboring") to regulated waters. *See* 33 C.F.R. § 328.3 (1987) (the 1986 Regulations); *id*. § 328.3(a)(7) & (c) (1987) (defining adjacent wetlands).

In 2006, a divided Supreme Court rejected this definition as exceeding the scope of the statutory term "navigable waters." *Rapanos*, 547 U.S. at 739. In assessing the legality of the 1986

Regulations, a four-Justice plurality determined that the language, structure, and purpose of the Clean Water Act restrict federal authority over non-navigable wetlands to only those that physically abut relatively permanent and continuously flowing waters, with an immediate surface water connection making the wetland and water body "indistinguishable." *Id.* at 755.

Justice Kennedy provided a fifth vote rejecting the 1986 Regulations defining "adjacent wetlands" as overbroad, joining the plurality in the judgment. But he proposed a broader interpretation of "navigable waters" than the plurality: the "significant nexus" test. *Id.* at 759 (Kennedy, J., concurring). Under this view, the government can regulate a non-abutting wetland if it significantly affects the physical, chemical, and biological integrity of a navigable-in-fact waterway. *Id.* at 779–80 (Kennedy, J., concurring). Justice Kennedy wrote that wetlands could be analyzed under this standard, either standing alone or in combination with features similarly situated within an otherwise undefined "region." *Id.* at 780 (Kennedy, J., concurring).

In 2015, after several years of effort to address *Rapanos*, EPA and the Army adopted new regulations redefining "navigable waters." 33 C.F.R. § 328.3 (2016); 80 Fed. Reg. 37,054 (June 29, 2015) (the 2015 Rule). Several lawsuits challenged the 2015 Rule. On August 21, 2019, the U.S. District Court for the Southern District of Georgia ruled on summary judgment that the 2015 Rule violated the Clean Water Act and permanently enjoined and remanded it without vacatur. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336, 1382–83 (S.D. Ga. 2019). A short time later, partially in response to the decision in *Georgia v. Wheeler*, EPA and the Army published a regulation that repealed the 2015 Rule and readopted the 1986 Regulations. 84 Fed. Reg. 56,626 (Oct. 22, 2019) (the 2019 Repeal and Recodify Rule).

On April 21, 2020, EPA and the Army again redefined "navigable waters" by publishing the Navigable Waters Protection Rule. 85 Fed. Reg. 22,250 (Apr. 21, 2020). That Rule redefines

"adjacent wetlands," 33 C.F.R. § 328.3(a)(4), as wetlands that abut or are flooded by other regulated waters, or are physically separated from such waters only by natural barriers or by permeable artificial barriers. 33 C.F.R. § 328.3(c)(1)(i)-(iv). On June 22, 2020, the Navigable Waters Protection Rule took effect in every state except Colorado.[3]

The Sacketts' interest in this lawsuit derives from EPA's claim, since 2008, that under the "adjacent wetlands" provision of the 1986 Regulations, it has authority over the Sacketts' Idaho property. Sackett Decl. ¶¶ 7, 9, and Exhibits A & B. In contrast, under the Navigable Waters Protection Rule, the Sacketts' property is not federally regulated, because it is separated by an impermeable artificial barrier (an elevated road) from a tributary to Priest Lake. *Id.* ¶¶ 3–4, 9, and Exhibits A & B; 33 C.F.R. § 328.3(c)(1)(i)–(iv).[4] Their property has no surface water connection to any surface water that is subject to the Clean Water Act. Sackett Decl. ¶¶ 4, 9.

So, under the Navigable Waters Protection Rule, the Sacketts are finally able to build a home on their long-vacant lot without first obtaining permission from the Army. But the relief sought by Conservation Law Foundation—vacating the Navigable Waters Protection Rule— would reinstate the 1986 Regulations' broader definition of "adjacent wetlands" and kick the Sacketts' property back into EPA and the Army's control. *See* ECF No. 19 at 61.

---

[3] In the State of Colorado's challenge to the Navigable Waters Protection Rule, the United States District Court for the District of Colorado enjoined the Agencies from implementing the Rule in Colorado. Order Granting As-Construed Motion for Stay of Agency Action, *Colorado v. EPA*, No. 1:20-cv-01461-WJM-NRN (D. Colo. June 19, 2020), ECF No. 61.

[4] "The term *adjacent wetlands* means wetlands that . . . [a]re physically separated from a water identified in paragraph (a)(1), (2), or (3) of this section only by an artificial dike, barrier, or similar artificial structure so long as that structure allows for a direct hydrologic surface connection between the wetlands and the water identified in paragraph (a)(1), (2), or (3) of this section in a typical year, such as through a culvert, flood or tide gate, pump, or similar artificial feature. An adjacent wetland is jurisdictional in its entirety when a road or similar artificial structure divides the wetland, as long as the structure allows for a direct hydrologic surface connection through or over that structure in a typical year." 33 C.F.R. § 328.3(c)(1)(iv).

## II.     This Lawsuit

On April 29, 2020, Conservation Law Foundation filed this lawsuit against EPA and the Army's adoption of the Navigable Waters Protection Rule. Conservation Law Foundation alleges that the Rule is inconsistent with the text and objectives of the Clean Water Act, ignores important scientific evidence, contains arbitrary and unexplained distinctions, contravenes Supreme Court precedent, and was promulgated without consultation required by the Endangered Species Act. ECF No. 19 ¶¶ 12–22. Conservation Law Foundation asks the Court to declare that the Rule is unlawful; vacate and set it aside; and order the Agencies to initiate consultation under section 7 of the Endangered Species Act. *Id.* at 61.

Conservation Law Foundation recently filed its opening brief on summary judgment in this record review case under the Administrative Procedure Act on October 15, 2020, and the federal defendants' brief is due December 3, 2020.

## ARGUMENT

## I.     The Sacketts Satisfy Rule 24(a) and May Intervene of Right

An applicant may intervene as of right under Rule 24(a)(2) by satisfactorily demonstrating that: (1) its application is "timely;" (2) it has an "interest relating to the property or transaction that forms the basis of the ongoing action;" (3) "the disposition of the action threatens to create a practical impairment or impediment to its ability to protect that interest;" and (4) the "existing parties inadequately represent its interest." *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998); Fed. R. Civ. P. 24(a)(2)).

The Sacketts satisfy each element of the Rule 24(a)(2) test and may intervene as of right.

A.      **The Sacketts' Motion Is Timely**

There is "no bright line rule" for determining the timeliness of intervention and the First

Circuit looks to the "totality of the relevant circumstances," examining four factors in particular:

> (1) the length of time the applicant knew or reasonably should have known that its
> interest was imperiled before it moved to intervene; (2) the foreseeable prejudice
> to existing parties if intervention is granted; (3) the foreseeable prejudice to the
> applicant if intervention is denied; and (4) idiocratic circumstances which, fairly
> viewed, militate for or against intervention.

*Banco Popular de P.R. v. Greenblatt*, 964 F.2d 1227, 1230–31 (1st Cir. 1992).

Each factor counsels in favor of the Sacketts' intervention.

First, the Sacketts have moved to intervene within a short window of having learned of

the harm posed to their interests, and during the earliest stages of this litigation. An applicant for

intervention must act "reasonably promptly," after learning of their interest in the litigation. But

there is no bright line rule for what constitutes "reasonable" promptness. *Id.* at 1231. For purposes

of the First Circuit test, "[p]romptness is a concept not a constant," to be informed by the

"attendant circumstances." *Id*. And each factor of the timeliness analysis is "informed to some

degree by the case's posture," with "the status of the case at the time when intervention is

attempted," being of most relevance. *Id.* This litigation is still in a preliminary posture, with no

substantive matters yet ruled upon. The original complaint in this action was filed on April 29,

2020, *see* ECF No. 1, an amended complaint was filed on August 3, 2020, *see* ECF No. 19, and a

scheduling order setting deadlines for briefing on summary judgment was issued on August 26,

2020, *see* ECF No. 25. The Sacketts have promptly moved to intervene within two months of the

issuance of the scheduling order, and well before the federal defendants' (whose side the Sacketts

support) December 3, 2020, summary judgment briefing date. As such, considering all of the

"attendant circumstances," and in light of the case's preliminary posture, the Sacketts' motion

was filed within a "reasonably prompt" window of learning of their interest in the outcome of this litigation.

Second, because the Sacketts have sought intervention early in the litigation, it will not prejudice any of the parties nor result in significant disruption or delay. No substantive matters have been ruled upon and briefing on summary judgment very recently began on October 15, 2020, with Defendants' briefs not due until December 3, 2020. *See* ECF No. 25. The Sacketts have attached their proposed Answer in Intervention as Attachment 1 to their motion to intervene, have agreed to participate on the same schedule as the Federal Defendants, have agreed to be bound by the default page limits for opposition briefs in the local rules, and have agreed to request that the Court modify the scheduling order, to provide Plaintiffs with additional time and pages to respond to the Sacketts' opposition to summary judgment, and to provide the Federal Defendants with additional pages to address the Sacketts' arguments. The Sacketts' participation will not in any way prejudice any party. Nor do any of the parties oppose the Sacketts' intervention. Under such circumstances, intervention is timely. *See Geiger v. Foley Hoag LLP Ret. Plan*, 521 F.3d 60, 64 (1st Cir. 2008) (granting a motion to intervene filed nine months after the initial lawsuit, when no "discovery or substantive legal progress" had yet occurred).

Third, should intervention be denied, the Sacketts will suffer substantial prejudice to their interests, as they will be denied the ability to defend a lawsuit with substantial implications for the use and enjoyment of their private property. Should this Court grant Conservation Law Foundation's requested relief, the Navigable Waters Protection Rule's exclusion of the Sacketts' home site from Clean Water Act regulation will be reversed, and the lot returned to EPA's asserted regulatory control. *See* Sackett Decl. ¶ 14.

Finally, "consideration of unusual features militating in favor of, or against, intervention," *Banco Popular de P.R.*, 964 F.2d at 1233, weighs heavily in favor of the Sacketts' intervention. The Sacketts' participation will not in any way impede the progress of this lawsuit or prejudice any party. No "unusual features" counsel against their intervention. However, should they be denied intervention, the Sacketts will suffer a substantial prejudice to their interests, being denied the ability to participate in an action with significant implications for their property interests. In such circumstances, where "the balance of prejudices . . . weigh heavily in favor" of the applicant for intervention, intervention will be deemed timely. *Geiger*, 521 F.3d at 65.

**B.     The Sacketts' Interests Relate to the Subject of This Litigation**

Those seeking to intervene of right must have an "interest relating to the property or transaction that is the subject of the action . . . ." Fed. R. Civ. P. 24(a)(2).  Although "the type of interest sufficient to sustain intervention as of right is not amenable to precise and authoritative definition," the First Circuit has held intervention appropriate where the applicant shows "a significantly protectable interest." *Pub. Serv. Co. of N.H.*, 136 F.3d at 205 (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). This interest must be "direct, not contingent." *Id.* (quoting *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir. 1989)). But the "contours" of the interest standard are "relatively broad," *id.*, and the First Circuit has rejected a "narrow reading" of Rule 24(a)(2)'s interest requirement, *Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 566 (1st Cir. 1999).

The First Circuit recognizes a "significantly protectable interest" where an applicant's "economic interests will be substantially affected" by the outcome of a lawsuit. *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992). Or where changed regulatory conditions, resulting from a plaintiff seeking declaratory or injunctive relief against a

government defendant, will affect the applicant for intervention "both immediately and in the future." *Id.* (citing *Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1344 (10th Cir. 1978)).

The Sacketts' interest is their ownership and use of private land which EPA has claimed for the last thirteen years contains a regulated wetland under the Clean Water Act. As discussed above, the Sacketts own a residential lot in Priest Lake, Idaho, which EPA found was subject to federal permitting authority under the Clean Water Act regulations in effect prior to the challenged Rule. Sackett Decl. ¶¶ 7, 9. Now, under the Navigable Waters Protection Rule, their property is not subject to such authority. If Conservation Law Foundation prevails in this case and the Rule's definition of "adjacent wetlands" is set aside, the Sacketts' property would again be subject to EPA and the Army's control under the prior definition of "adjacent wetlands." Sackett Decl. ¶¶ 10, 14. The revival of the prior rule would have an immediate effect on their ability to use their property without a Clean Water Act permit, preventing them from building a home on the vacant lot. *Id.* This is a noncontingent interest, stemming directly from the declaratory and injunctive relief sought by Conservation Law Foundation and the changed regulatory conditions that would result. The Sacketts therefore have a "significantly protectable interest" in this litigation. *See Conservation Law Found.*, 966 F.2d at 43; *Nat. Res. Def. Council*, 578 F.2d at 1344. Indeed, as landowners directly subject to the regulations at issue, their interests easily qualify them for intervention. *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (noting in the context of Article III standing that there is "ordinarily little question" of standing for anyone who is the object of a regulation).

Additionally, the Sacketts are engaged in ongoing litigation against EPA regarding federal permitting control of their property. *See* Sackett Decl. ¶ 12; *Sackett v. EPA*, No. 19-35469 (9th

Cir.). Should Conservation Law Foundation prevail, and the redefinition of "adjacent wetlands" be vacated, that would affect the issues being litigated by the Sacketts in the Ninth Circuit. This is another example of how the relief sought by Plaintiffs would significantly affect the Sacketts' interests in their Idaho property.

### C.      Disposition of This Action May Impair or Impede the Sacketts' Interests

The threshold for potential impairment of interests is low; Rule 24(a)'s requirement addresses whether, as a "practical" matter, denial of intervention would "impair or impede" a prospective intervenor's ability to protect its interests. *Conservation Law Found.*, 966 F.2d at 42 (quoting Fed. R. Civ. P. 24(a)(2)). Where the applicant for intervention has demonstrated a "significantly protectable interest," practical impairment generally requires little additional discussion. *See*, *e.g.*, *id.* at 42 (noting the interrelationship between the interest and impairment prongs, and finding intervention appropriate without separately addressing the question of impairment); *Nextel Commc'ns of Mid-Atl., Inc. v. Town of Hanson*, 311 F. Supp. 2d 142, 150 (D. Mass. 2004) (finding that practical impairment was "obvious," where the applicant for intervention had demonstrated a significantly protectable interest).

The Sacketts have an interest in preserving the Navigable Waters Protection Rule's definition of "adjacent wetlands," and their interests in their Idaho property may be impaired or impeded if they are unable to do so in this case. If Conservation Law Foundation prevails and the Navigable Waters Protection Rule's definition of "adjacent wetlands" is enjoined or set aside, that will alter the regulations that govern the Sacketts' use of their property, to their detriment. This would constitute a substantial "practical" impairment of the Sacketts' interests. As the Advisory Committee Notes to Rule 24(a) explain, "[i]f an absentee would be substantially affected in a

practical sense by the determination made in an action, [t]he[y] should, as a general rule, be

entitled to intervene." Fed. R. Civ. P. 24 advisory committee note to 1966 amendment.

### D.      The Existing Parties Do Not Adequately Represent the Sacketts' Interests

"[A]n applicant for intervention need only make a minimal showing that the representation

afforded by existing parties likely will prove inadequate." *Pub. Serv. Co. of N.H.*, 136 F.3d at 207

(citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)); *see also Students*

*for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 807 F.3d 472, 475 (1st Cir.

2015) (noting that an applicant for intervention need only sustain a "minimal" showing of

inadequacy). First Circuit courts evaluate three factors when assessing adequacy of representation:

> (1) Are the interests of a present party in the suit sufficiently similar to that of the
> absentee such that the legal arguments of the latter will undoubtedly be made by
> the former; (2) is that present party capable and willing to make such arguments;
> and (3) if permitted to intervene, would the intervenor add some necessary element
> to the proceedings which would not be covered by the parties in the suit?

*United Nuclear Corp. v. Cannon*, 696 F.2d 141, 144 (1st Cir. 1982) (quoting *Blake v. Pallan,* 554

F.2d 947, 954–55 (9th Cir. 1977)); *see also Pub. Serv. Co. of N.H.*, 163 F.3d at 208; *Nextel*

*Commc'ns of Mid-Atl.*, 311 F. Supp. 2d at 150–52.

"[T]he intervenor need only show that 'representation *may* be inadequate, not that it *is*

inadequate." *Id.* (quoting *Conservation Law Found.*, 966 F.2d at 44).[5] Additionally, First Circuit

courts have determined that any assumption of adequacy is overcome where a prospective

intervenor demonstrates that there may be an "adversity of interest," or that the government's

---

[5] Although the First Circuit applies a presumption of adequate representation in cases where a
private applicant seeks intervention to defend the decision of a "representative governmental
body," *Pub. Serv. Co. of New Hampshire*, 136 F.3d at 207, "'[p]resumption' means no more in
this context than calling for an adequate explanation as to why" the parties do not represent the
interests of the applicant for intervention, *Maine v. U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st
Cir. 2001). Given the numerous reasons stated in the text demonstrating a lack of adequate
representation by the Agencies, this presumption does not apply to prevent the Sacketts'
intervention.

representation is compromised by "collusion, or nonfeasance." *Conservation Law Found.*, 966 F.2d at 44.[6]

The Sacketts have amply demonstrated under each factor of the First Circuit analysis that intervention is warranted.[7] Additionally, eliminating any doubt, there exists a genuine adversity of interest between the Sacketts and the Agencies.

### 1.    The Three First Circuit Adequate Representation Factors Counsel in Favor of Intervention

First, the federal government's public interests are not "sufficiently similar" to those of the Sacketts, such that it will "undoubtedly" make the Sacketts' legal arguments. *United Nuclear Corp.*, 696 F.2d at 144. The Agencies have a variety of regulatory and public interests implicated by this case, including maximizing their power and discretion. Additionally, the Agencies have reported interests in "protect[ing] navigable waters from pollution while providing an implementable approach to determining regulatory jurisdiction under the CWA." *See* 85 Fed. Reg. at 22,262. These interests diverge significantly from the Sacketts' direct interests as private landowners whose ability to develop, use, and enjoy their residential property is left unmolested by the challenged regulations, and whose only goal is to defend their freedom to build a home on a 2/3-acre residential lot in northern Idaho. Sackett Decl. ¶¶ 5, 11, 13. Under such circumstances, intervention by a private party is favored. *See Conservation Law Found.*, 966 F.2d at 44–45 ("a governmental entity charged by law with representing the public interest of its citizens might shirk its duty were it to advance the narrower interest of a private entity" (citing *Dimond v. District of Columbia*, 792 F.2d 179, 192–93 (D.C. Cir. 1986))); *United Nuclear Corp*, 696 F.2d at 144

---

[6] However, in the First Circuit, these three items do not constitute an "exclusive list." *Daggett*, 172 F.3d at 111.

[7] The test is not conjunctive, and intervention is appropriate whenever any *one* of these factors is met. *See Nextel Commc's of Mid-Atl.*, 311 F. Supp. 2d at 152 (finding intervention warranted where only one of the three adequate representation factors had been met).

(noting that "government representation [is] often inadequate to protect the interests of 'private proprietors'" (citing *Nat'l Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 383 (10th Cir. 1977))); *see also Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255 (10th Cir. 2001) (collecting cases from the First, Fourth, Fifth, Eighth, and Ninth Circuits favoring intervention where the government's focus on "broad public interests" caused it to diverge from the "narrower interests" of a private party).

Second, as a result of these fundamentally divergent interests, the Agencies are not "capable and willing" to make the Sacketts' argument. The Sacketts anticipate that, in line with the government's interests generally, EPA and the Army will defend the Navigable Waters Protection Rule on grounds that maximize agency discretion going forward, to preserve agency power and flexibility. *See* 85 Fed. Reg. at 22,263 (describing the Rule's changes to the scope of wetland regulation as an exercise of agency judgment and discretion). Indeed, it has been the Agencies' consistent position that the Navigable Waters Protection Rule's definition of "adjacent wetlands" is an allowable exercise of agency discretion, deserving of deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) and *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005).[8] By contrast, the Sacketts will argue that the Navigable Waters Protection Rule's new and narrower definition of "adjacent wetlands" is not a matter of agency discretion, but is *legally compelled* by Supreme Court precedent—namely, by the controlling plurality opinion in *Rapanos*. *See* 547 U.S.

---

[8] *See* Appellants' Opening Brief at 26–35, *Colorado v. EPA*, No. 20-1238 (10th Cir. July 9, 2020), Doc. No. 010110374057 at 38–47 (arguing for *Chevron* deference); Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Cross-Motion for Summary Judgment at 8–16, *S.C. Coastal Conservation League v. Wheeler*, No. 2:20-cv-01687-DCN (D.S.C. Aug. 24, 2020), ECF No. 70-1 at 18–26 (same); Opposition to Plaintiffs' Motion for Preliminary Injunction at 20–26, *California v. Wheeler*, No. 3:20-cv-03005-RS (N.D. Cal. June 1, 2020), ECF No. 106 (same).

at 719, 756; *see also* M. Reed Hopper, *Running Down the Controlling Opinion in* Rapanos v. United States, 21 U. Denv. Water L. Rev. 47 (2017-2018). A ruling in the Sacketts' favor would mean that the Agencies cannot reverse the Rule's "adjacent wetlands" definition through a subsequent rulemaking. But the Sacketts' position is one that the Agencies have expressly rejected. *See* 85 Fed. Reg. at 22,273 (rejecting the suggestion that the *Rapanos* plurality controls). So, the Sacketts will take a legal position that is directly contrary to the Agencies' argument that the Navigable Waters Protection Rule, as it applies to wetlands, was an exercise of discretionary agency interpretation. As such, the Agencies are "not capable and willing to" make the Sacketts' arguments and therefore cannot adequately represent their interests.

Third, the Sacketts offer a "necessary element to the proceedings" that EPA and the Army will neglect. By offering an argument which has been expressly rejected by the Agencies, the Sacketts, by definition, have offered a "necessary element to the proceedings." *Cf. California ex rel. Lockyer v. United States*, 450 F.3d 436, 444–45 (9th Cir. 2006) (finding a lack of adequate representation and favoring intervention where the proposed intervenors' arguments had been "abandon[ed] or concede[d]" by the government, as under such circumstances, the intervenors brought a "point of view to the litigation not presented by either the plaintiffs or the defendants."). And EPA and the Army's historical inconsistency on the issues raised in this case indicates the necessity of the Sacketts' participation and the arguments they propose to offer. In its redefinition of regulated wetlands, the Navigable Waters Protection Rule reverses earlier rules issued by the very same agencies. Indeed, these conflicting rules are of a very recent vintage. *See* 84 Fed. Reg. 56,626 (Oct. 22, 2019); 80 Fed. Reg. 37,054 (June 29, 2015). This creates serious doubt the Agencies will be capable of, or willing to, protect the Sacketts' interests throughout the course of this litigation, and the Sacketts therefore offer a "necessary element to the proceedings." *Cf. Nextel*

*Commc'ns of Mid-Atl.*, 311 F. Supp. 2d at 152 (applicants for intervention had offered a necessary element to the proceedings where they had taken an "uncompromising" position on the issues being litigated, as compared to past compromise and inconsistency on the part of the government defendant).

###### 2.   The differences in objective between the Agencies and the Sacketts rise to the level of an "adversity in interest"

Finally, eliminating any doubt as to the Sacketts' right to intervene, the divergent interests of the Sacketts and the Agencies constitute a genuine "adversity in interest." *See Conservation Law Found.*, 966 F.2d at 44. The Sacketts and EPA are presently adverse parties in pending litigation over whether the Clean Water Act applies to their property, *see Sackett v. EPA*, case no. 19-35469 (9th Cir.), which has been ongoing for twelve years. Sackett Decl. ¶ 12. Throughout that time, EPA has argued for deference to its interpretations of "navigable waters" and "adjacent wetlands."[9] As discussed above, in their defense of the Navigable Waters Protection Rule, EPA and the Army will likely continue to argue for deference to their interpretation of "adjacent wetlands." *See supra* note 8. The Sacketts have therefore sought intervention in this case partly out of a concern that in its defense of the Rule on discretionary grounds, EPA is protecting its litigation position against the Sacketts that the prior version of the regulations were also a valid exercise of discretionary agency decision making. The Sacketts' desire to intervene is thus motivated by significantly more than a mere matter of strategy or "litigation judgment." *Daggett*, 172 F.3d at 112. It is motivated by a genuine, and ongoing, "adversity of interest" to that of the Agencies.

---

[9] *See, e.g.*, United States Combined Memorandum at 10, 19, *Sackett v. EPA*, No. 2:08-cv-00185-EJL (D. Idaho Nov. 20, 2015), ECF 105-1 (arguing for deference to EPA interpretation of adjacent wetland regulations as applied to the Sacketts' property).

**IV.     In the Alternative, the Sacketts Satisfy the Standard for Permissive Intervention**

If the Court denies the Sacketts' motion to intervene as of right, it should alternatively grant

them permission to intervene under Rule 24(b). On timely motion, the Court may permit anyone

to intervene who "has a claim or defense that shares with the main action a common question of

law or fact." Fed. R. Civ. P. 24(b)(1)(B); *Daggett*, 172 F.3d at 112–13 (1st Cir. 1999). District

courts have broad discretion to grant intervention under the permissive standard. *See id.* ("the

district court can consider almost any factor rationally relevant but enjoys very broad discretion in

granting or denying the motion"). Rule 24(b) "plainly dispenses with any requirement that the

intervenor shall have a direct personal or pecuniary interest in the subject of the litigation."

*Disability Law Ctr. v. Mass. Dep't of Corr.*, No. 07-10463-MLW, 2007 WL 9798255 (D. Mass.

Sept. 5, 2007) (quoting *Sec. & Exch. Comm'n v. U.S. Realty & Improvement Co.*, 310 U.S. 434,

459 (1940)). Rather, a party who raises a question of law or fact in common with the main action

should be allowed to intervene as long as doing so will not "unduly delay or prejudice the

adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The Sacketts' defense of the challenged rule plainly raises questions of law or fact in

common with Conservation Law Foundation's claims and EPA and the Army's defenses. For

instance, the Sacketts' argument that Supreme Court precedent compels the Rule's definition of

regulated wetlands raises a question of law—whether Justice Scalia's plurality opinion or Justice

Kennedy's concurring opinion in *Rapanos v. United States* controls—that is also raised by

Conservation Law Foundation's complaint and the Agencies' Answer. *See* ECF No. 19 ¶¶ 19, 55,

137–140; *See* ECF No. 21 ¶¶ 19, 55, 137–140. And because the Sacketts have sought early

intervention, prior to any substantive matters being ruled upon, and well over a month before they

would have to file a brief as a defendant-intervenor, their participation will not unduly prejudice any of the parties or result in significant disruption or delay. Fed. R. Civ. P. 24(b)(3).

Therefore, were the Court to conclude that the Sacketts lack a right to intervene under Rule 24(a), it should allow intervention permissively under Rule 24(b).

## CONCLUSION

The Sacketts should be granted intervention as of right or, in the alternative, should be granted permissive intervention.

DATED:  October 21, 2020.

Respectfully Submitted,

/s/ Matthew L. Fabisch
MATTHEW L. FABISCH
(BBO 673821)
Managing Attorney
Fabisch Law Offices
664 Pearl St.
Brockton, MA 02301
Tel: (401) 324-9344
Fax: (401) 354-7883
Email: Fabisch@Fabischlaw.com

ANTHONY L. FRANÇOIS*
Cal. Bar No. 184100
CHARLES T. YATES*
Cal. Bar No. 327704
Pacific Legal Foundation
930 G Street
Sacramento, CA  95814
Telephone:  (916) 419-7111
Email:  afrancois@pacificlegal.org
Email:  cyates@pacificlegal.org

*Attorneys for Proposed Defendant-Intervenors*
*Chantell and Michael Sackett*

* *pro hac vice* motions pending

## CERTIFICATE OF SERVICE

I hereby certify that, on October 21, 2020, I filed and thereby caused the foregoing document to be served via the CM/ECF system in the United States District Court for the District of Massachusetts on all parties registered for CM/ECF in the above-captioned matter.

/s/ Matthew L. Fabisch
MATTHEW L. FABISCH