# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>    Defendants,<br><br>CHANTELLE SACKETT; MICHAEL SACKETT,<br><br>    Defendant-Intervenors. | Case No. 20-cv-10820-DPW |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
## TO MODIFY SCHEDULING ORDER

The Court should deny Defendants' motion for a second extension of their briefing deadline. Defendants have not demonstrated diligence in trying to meet the already-extended deadline, they will not suffer hardship absent an extension or stay, further delay prejudices Plaintiffs, and adhering to the current deadline will not waste judicial resources.

Plaintiffs previously agreed to a single 30-day extension of Defendants' reply brief deadline in light of the then-recent administration change, to give the new administration time to review the Navigable Waters Protection Rule (the Rule). But another extension is unwarranted. Despite Defendants' claim that they need 30 more days to review the Rule, they have had more than three months to do so. Defendants have not explained why three months was insufficient, nor have they given any assurance that another 30 days will enable them to conclude their review. Instead, they suggest that they may file yet another extension request after this one, or may even request "an extended abeyance" "should they require additional time." Defs.' Mot. ¶ 8,

ECF No. 103. Defendants fail to mention any hardship to them if they are required to file their reply brief by the current deadline. By contrast, a second extension of Defendants' briefing deadline would prejudice Plaintiffs. Every day that the Rule remains in effect, more waters are slated for destruction, harming Plaintiffs' members. Finally, adhering to the current deadline would not waste judicial resources. Even if the agencies ultimately decide to repeal or revise the Rule, any new rulemaking process will likely take several years, with the Rule remaining in effect during that time (unless it has been vacated by a court). Thus, a decision on the merits would be necessary regardless of the outcome of Defendants' review of the Rule.

## STANDARD OF REVIEW

A district court has "significant" discretion to enforce a filing deadline. *Perez-Cordero v. Wal-Mart P.R.*, 440 F.3d 531, 533 (1st Cir. 2006); *see also Mendez v. Banco Popular de P.R.*, 900 F.2d 4, 6-7 (1st Cir. 1990). A party seeking an extension of a court-ordered deadline must show "good cause." *See* Fed. R. Civ. P. 6(b)(1), 16(b)(4); *accord* L.R. 16.1(g). The good cause standard focuses on the diligence of the party requesting the extension, and requires showing that "the deadline cannot reasonably be met despite [that party's] diligence." *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154 (1st Cir. 2004) (quoting Advisory Committee Notes to the 1983 Amendments to Fed. R. Civ. P. 16(b)). Prejudice to the nonmoving party is also a relevant consideration. *Id.* at 155.

To the extent Defendants are requesting a "stay" rather than simply a deadline extension, Defs.' Mot. ¶ 8 (requesting an extension of "the stay"), Defendants "bear[ ] the burden of establishing [the] need" for a stay, *Clinton v. Jones*, 520 U.S. 681, 708 (1997). The decision to grant or deny a stay involves balancing the interests of the parties, the Court, and the public. *See Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004). Relevant

factors include "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party without a stay; and, (3) judicial economy." *Good v. Altria Grp., Inc.*, 624 F. Supp. 2d 132, 134 (D. Me. 2009); *Energetiq Tech., Inc. v. ASML Neth. B.V.*, No. 15-cv-10240, 2016 WL 11727302, at *1 (D. Mass. Apr. 1, 2016). "[I]f there is even a fair possibility that the stay . . . will work damage to some one else," the movant "must make out a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936); *accord Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir. 1983).

## ARGUMENT

### I. Defendants have failed to satisfy the "good cause" standard

Defendants have failed to show that there is "good cause" for another 30-day extension of their briefing deadline. Fed. R. Civ. P. 6(b)(1), 16(b)(4); L.R. 16.1(g). Diligence is necessary to establish good cause, and Defendants have not shown diligence in their efforts to review the Rule in time to meet their already-extended briefing deadline. Defendants' lack of diligence "seals off . . . relief." *O'Connell*, 357 F.3d at 155 (quoting *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998)). Further, although Defendants claim that another 30-day extension will give them time to review the Rule, they give no indication that 30 days will be sufficient to complete this review, and expressly leave open the possibility that in another month they may file a third extension request or even a request for "an extended abeyance." Defs.' Mot. ¶ 8.

Defendants' request for more time may have been reasonable in February, when they filed their first motion for a 30-day extension shortly after the administration change. *See* ECF No. 98 (Feb. 5, 2021). However, they have now had more than three months to review the Rule to determine their position in this litigation. Defendants' motion says almost nothing about what progress, if any, the agencies have made with respect to their review of the Rule over the past

3

several months. Nor does it give any indication that Defendants have taken the Court's scheduling order into account or that they have been diligently attempting to meet the May 10 deadline. Instead, their motion is "grounded in essentially the same facts" as the request they made over two months ago. *Mendez*, 900 F.2d at 6-7 (affirming decision to deny motion for a further extension where court had already granted the party an extra 30 days and "was entitled to rely on the implication that 30 days was enough").

Although Defendants assert that the new EPA Administrator was "recently" sworn in on March 10, Defs.' Mot. ¶ 8, that does not excuse Defendants' lack of diligence in meeting the already-extended deadline. The agencies purportedly started their review of the Rule in February. *See* ECF No. 98 ¶ 5 ("In conformance with the Executive Order, Defendants *are reviewing* . . . the rule at issue in this case." (emphasis added)). In any event, by the time Defendants' reply brief is due on May 10, the new EPA Administrator will have been in office for two months, which is ample time for someone to "consider options" and "make an informed decision" on Defendants' position in this case. Defs.' Mot. ¶ 8.

Even more troubling, Defendants give no timeline for when they expect to complete their review of the Rule or any assurance that this second extension request will be their last. To the contrary, they expressly state that they may seek more extensions or an extended abeyance in the future "should they require additional time." *Id.* Defendants thus appear to want the Court and Plaintiffs to accommodate the agencies' schedule, however vague their projected timeline and however long they decide to spend "consider[ing] options." *Id.* But Defendants' inability to meet their deadline because of their own delay or inaction is not "good cause." Defendants must, at a minimum, show that they have been making diligent efforts to expedite their review of the Rule

to meet the Court-ordered deadline. *See O'Connell*, 357 F.3d at 155; *House of Clean, Inc. v. St. Paul Fire & Marine Ins. Co.*, 775 F. Supp. 2d 296, 298 (D. Mass. 2011). They have not done so.

There is little difference between seeking serial extension requests, as Defendants suggest they may do, and seeking an indefinite stay of proceedings, as Defendants also suggest they may do. *See* Defs.' Mot. ¶ 8. But Defendants have not met their burden of showing that a stay is warranted. They have provided no timeline for completing their review of the Rule, they would not suffer hardship absent a stay, and, as discussed below, further delay prejudices Plaintiffs. *See, e.g.*, Order at 4-5, *Pasqua Yaqui Tribe v. EPA*, No. 20-cv-00266 (D. Ariz. Apr. 12, 2021), ECF No. 32 (denying Defendants' motion for a 90-day abeyance in challenge to the Navigable Waters Protection Rule because it "may result in damage to Plaintiffs or others and there is no indication that agency review of the challenged rule will be completed within a reasonable time"); *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("a stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time" (citation omitted)); *Microfinancial*, 385 F.3d at 79 (finding district court acted well within its discretion to deny stay "especially since the defendants were, in effect, asking to stay proceedings for an indefinite (and potentially protracted) period").[1]

---

[1] Although some courts have granted requests for stays or briefing deadline extensions in other lawsuits challenging the Rule, in nearly all those cases, plaintiffs agreed to the stays or extensions, and the proceedings were not as far along as in this case, where briefing is nearly complete. *See* Minute Order Granting Joint Mot. to Hold in Abeyance, *Env't Integrity Project v. Regan*, No. 20-cv-1734 (D.D.C. Jan. 28, 2021); Order Granting Parties' Joint Mot. to Hold Cases in Abeyance, *Chesapeake Bay Found. v. Regan*, Nos. 20-cv-1063, 20-cv-1064 (D. Md. Feb. 2, 2021), ECF No. 48; Order, *Waterkeeper All. v. Regan*, No. 18-cv-03521 (N.D. Cal. Feb. 16, 2021), ECF No. 103 (granting joint motion for 60-day stay); Second Order Modifying Briefing Schedule, *Navajo Nation v. Regan*, No. 20-cv-602 (D.N.M. Mar. 17, 2021), ECF No. 29 (granting Defendants' unopposed motion to extend their briefing deadline to June 1); Order, *California v. Regan*, No. 20-cv-03005 (N.D. Cal. Apr. 16, 2021), ECF No. 241 (granting request for further stay and extension of deadlines) & Pls.' Resp. to Defs.' Mot. to Continue Stay, *California v. Regan*, No. 20-cv-03005 (N.D. Cal. Apr. 13, 2021), ECF No. 238 (consenting to

## II. Another extension of Defendants' briefing deadline would prejudice Plaintiffs

The Court should also deny Defendants' second extension request because further delay will prejudice Plaintiffs. *See O'Connell*, 357 F.3d at 155 (noting that "[p]rejudice to the opposing party" is a relevant consideration when deciding whether to grant relief under Rule 16(b)); *Good*, 624 F. Supp. 2d at 134 (listing prejudice to opposing party as one factor courts consider when deciding whether to grant a request for a stay); *Microfinancial*, 385 F.3d at 78 (same).

The Rule defines which waters are protected under the Clean Water Act as "waters of the United States" and which waters are excluded from those protections. *See* 33 C.F.R. § 328.3. It illegally excludes all ephemeral streams and many wetlands that have long been protected by the Act and that are critical to the nation's water quality, leaving vast numbers of waters vulnerable to pollution and destruction. *See* Pls.' Mem. ISO Mot. for Summ. J. 10-11, ECF No. 31. Pursuant to the Rule's new definition, and in response to requests by developers and others for jurisdictional determinations about specific water bodies, within the past 10 months the Army Corps has found that over 4,000 wetlands and over 2,500 ephemeral waters are not protected by the Clean Water Act. Suppl. Devine Decl. ¶¶ 7, 10-11. Over the past two months alone, the Army Corps determined that more than 1,000 wetlands and ephemeral waters do not qualify for Clean Water Act protection. *Id.* ¶¶ 12-13. Those waters have thus been green-lighted for destruction without important federal safeguards, such as mitigation. *See* 40 C.F.R. § 230.93. According to EPA's website, about 53% of waters evaluated by the agencies in recent years

---

request for further stay and extension). Only two stay motions have been granted over the plaintiffs' opposition. Neither of those courts provided any reasons for their decisions, and one was granted before plaintiffs filed an opposition brief. *See* Order, *Murray v. Regan*, No. 19-cv-1498 (N.D.N.Y. Feb. 2, 2021), ECF No. 42; Order, *S.C. Coastal Conservation League v. Regan*, No. 20-cv-01687 (D.S.C. Mar. 2, 2021), ECF No. 106. One court denied Defendants' motion for a stay. *See* Order, *Pasqua Yaqui Tribe v. EPA*, No. 20-cv-00266 (D. Ariz. Apr. 12, 2021), ECF No. 32 (denying motion for 90-day abeyance).

under the 1986/88 regulations (which were in effect immediately before the Navigable Waters Protection Rule) were found to be protected as "waters of the United States." Suppl. Devine Decl. ¶ 15. By contrast, fewer than 9% of waters evaluated under the Navigable Waters Protection Rule were found to be "waters of the United States." *Id*. ¶ 8.

Given that the agencies are evaluating hundreds of waters every month and determining that the vast majority lack Clean Water Act protections under the Rule, an additional 30-day extension harms Plaintiffs by substantially increasing the risk that waters they use will be polluted or destroyed. Plaintiffs' members rely on waters excluded from the Rule's definition of "waters of the United States" for swimming, boating, hiking, and drinking, as well as for their livelihoods and health. *See* Pls.' Mem. ISO Mot. for Summ. J. 37-44, ECF No. 31. Plaintiffs' members also enjoy viewing endangered and threatened species whose habitat is at risk of being lost or degraded as a result of the Rule. *See id.* at 41-43. The Army Corps has already issued determinations finding that several streams and wetlands on which Plaintiffs' members rely are no longer protected by the Clean Water Act. *See id.* at 38-39, 40 n.11, 43 n.12 (citing non-jurisdictional determinations); *see also* Pls.' Reply Br. ISO Mot. for Summ. J. (Pls.' Reply Br.) 39, ECF No. 100. Last fall, for example, the Army Corps determined that over 300 acres of wetlands next to Georgia's Okefenokee National Wildlife Refuge are no longer protected by the Clean Water Act because of the Rule. *See* Pls.' Reply Br. 39; Suppl. Wu Decl. Ex. 8, ECF No. 102-8, & Ex. 9, ECF No. 102-9. As a result, a proposed mining project can destroy those wetlands without needing a Clean Water Act permit, potentially causing substantial harm to the Refuge and Plaintiff Natural Resources Defense Council's members who enjoy visiting it. *See* Pls.' Reply Br. 39.

The prejudice to Plaintiffs outweighs Defendants' interest in "conserv[ing] . . . resources." Defs.' Mot. ¶ 8. A district court in Arizona recently rejected a similar claim by Defendants in another case challenging the Rule, finding that concerns about wasting resources were "speculative," especially considering that Defendants "offered no timeline of when agency review of the rule will begin, much less be completed." Order at 4, *Pasqua Yaqui Tribe v. EPA*, No. 20-cv-00266 (D. Ariz. Apr. 12, 2021), ECF No. 32; *accord Ariz. Yage Assembly v. Barr*, No. 20-cv-03098, 2020 WL 5629833, at *8 (N.D. Cal. Sept. 21, 2020) (rejecting claim that a stay would promote efficiency and avoid "'prejudging' the regulatory process," considering among other things the uncertain timeline for issuing new regulations). Defendants' concern about conserving resources is even weaker in this case, where (unlike in the *Pasqua Yaqui Tribe* case) summary judgment briefing is nearly complete, except for Defendants' final reply brief.

Although Defendants will need to expend some resources writing their reply brief, that is not a sufficient reason to delay proceedings. Where there is "even a fair possibility" that a stay will harm a plaintiff, the defendant must show that there is "clear . . . hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255; *see also Austin*, 705 F.2d at 5. "[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). "This is 'particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before the Court.'" *Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 21-22 (D.D.C. 2019) (quoting *Greenlaw v. United States*, 554 U.S. 237, 244 (2008)).

Requiring Defendants to file their reply brief by the Court-ordered deadline will not waste judicial resources either. *Contra* Defs.' Mot. ¶ 8. When briefing is complete, the Rule will almost certainly still be in effect and will likely remain in effect for several years—absent a

court-ordered vacatur in this case or another case. It would therefore not waste judicial resources for the Court to adjudicate the Rule's legality at that time. Defendants cite their "inherent authority" to review and revise regulations, *id.* ¶ 6, but they cite no authority holding that litigation over rules currently in effect must stop while the agencies complete that review. In two lawsuits challenging the Clean Water Rule—which was the agencies' definition of "waters of the United States" issued in 2015—the parties briefed summary judgment and the courts issued decisions on the merits *after* the agencies had already proposed a new rule to repeal the Clean Water Rule. *See Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. 2019); *Texas v. EPA*, 389 F. Supp. 3d 497 (S.D. Tex. 2019).

Even if the agencies decide to revise or replace the Rule, any new rulemaking will likely take several years, and the outcome would be uncertain. *See, e.g.*, *Riverkeeper, Inc. v. Pruitt*, No. 17-cv-4916, 2018 WL 987262, at *3-5 (S.D.N.Y. Feb. 20, 2018) (finding that litigation would not waste judicial resources despite new rulemaking because of "several uncertain steps [that] must occur over a lengthy period of time before Plaintiffs' claims may become moot"); *Austin*, 705 F.2d at 5 (upholding denial of stay where plaintiff would have been prejudiced by "being forced to wait for an undefined but potentially lengthy period before" obtaining relief). The rulemaking processes for the Clean Water Rule and the Navigable Waters Protection Rule took four years and three years respectively. *See* Clean Water Rule, 80 Fed. Reg. 37,054, 37,102 (June 29, 2015) (stating that the agencies started the rulemaking process in 2011); Navigable Waters Protection Rule, 85 Fed. Reg. 22,250, 22,259-60 (Apr. 21, 2020) (noting that the agencies announced an intent to rescind or revise the Clean Water Rule in March 2017). Assuming any new rulemaking takes a similar amount of time, the Rule will remain in effect and will continue to harm Plaintiffs for years, rendering the lawsuit ripe for decision now.

The First Circuit has noted that "it is trite but often true that justice delayed is justice denied." *In re Atl. Pipe Corp.*, 304 F.3d 135, 147 (1st Cir. 2002). That adage is true in this case where the Rule is causing ongoing environmental damage that cannot be remedied once it occurs. Because prompt resolution of this case is necessary to prevent further environmental harm and because Defendants have not provided any reason why they cannot meet the already-extended briefing deadline other than their own inaction, the Court should deny Defendants' request for an additional extension.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny Defendants' motion for an additional 30-day extension of their reply brief deadline. If the Court grants Defendants' request, Plaintiffs ask that the Court state that no further extensions shall be granted.

Dated: April 28, 2021                          Respectfully submitted,

*/s/ Jolie McLaughlin*
Jolie McLaughlin, *pro hac vice*
Natural Resources Defense Council
20 N. Wacker Drive, Suite 1600
Chicago, IL 60606
Phone: (312) 995-5902
Email: jdmclaughlin@nrdc.org

Nancy S. Marks, Bar No. 542204
Michelle Wu, *pro hac vice*
Catherine Marlantes Rahm, *pro hac vice*
Natural Resources Defense Council
40 West 20th Street
New York, NY 10011
Phone: (212) 727-4414
Email: nmarks@nrdc.org

*Counsel for Plaintiffs Clean Wisconsin, Natural Resources Defense Council, New Mexico Wilderness Alliance, and Prairie Rivers Network*

*/s/ Heather A. Govern*
Heather A. Govern, Bar No. 688482
Conservation Law Foundation
62 Summer Street
Boston, MA 02110
Phone: (617) 850-1765
Email: hgovern@clf.org

Elena Mihaly, Bar No. 687387
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602
Phone: (802) 622-3012
Email: emihaly@clf.org

*Counsel for Plaintiffs Conservation Law Foundation, Connecticut River Conservancy, Massachusetts Audubon Society, and Merrimack River Watershed Council*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2021, I caused the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO MODIFY SCHEDULING ORDER**, and attached declaration, to be filed and served upon counsel of record via the Court's CM/ECF filing system.

Dated:  April 28, 2021                                          */s/ Jolie McLaughlin*