**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, *et al*.,    ) | |
| ) | |
| ) | |
|     Plaintiffs,    ) | Case No. 20-cv-10820-DPW |
| ) | |
|     v.    ) | |
| ) | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.,*    ) | |
| ) | |
|     Defendants,    ) | |
| ) | |
| CHANTELL SACKETT; MICHAEL SACKETT,    ) | |
| ) | |
|     Defendant-Intervenors.    ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR**

Defendants United States Environmental Protection Agency and the United States Army Corps of Engineers, *et al*. (the "Agencies") move the Court to remand the Navigable Waters Protection Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22,250 (Apr. 21, 2020) (the "NWPR") to the Agencies and to dismiss this action.  The Agencies respectfully submit this motion in lieu of filing a reply brief in support of their cross-motion for summary judgment, which is due today.

As explained more fully herein, remand is appropriate because the Agencies have completed their review of the NWPR and have decided to commence a new rulemaking to revise or replace the rule.  A remand would avoid potentially unnecessary litigation in this Court over aspects of the NWPR that will be reconsidered in a new rulemaking, would conserve the parties' limited resources, and would best serve the interest of judicial economy.  In addition, remand would avoid requiring the Agencies to take positions on merits questions that might appear to

1

pre-judge issues that will be reconsidered through notice-and-comment rulemaking.  Through the

Agencies' administrative rulemaking process, all members of the public, including the parties to

this case, will have the opportunity to submit comments and recommendations, and the

Agencies' new final rule therefore may resolve or moot some or all of the claims presented in

this litigation.  And, if a new rule does not resolve the parties' concerns, that rule could itself be

challenged.  If a challenge occurs, the parties and reviewing courts would benefit from reviewing

the Agencies' new final action and new administrative record, rather than continuing to litigate

the NWPR on a record that may be rendered moot and out of date.

The Agencies have conferred with the parties regarding this motion.  Neither Plaintiffs

nor Defendant-Intervenors the Sacketts are able to provide a position on this motion prior to

reviewing it.

## BACKGROUND

### A.    Statutory and Regulatory Overview

The Federal Water Pollution Control Act, commonly known as the Clean Water Act

("CWA"), seeks "to restore and maintain the chemical, physical, and biological integrity of the

Nation's waters."  33 U.S.C. § 1251–1388.  Among other provisions, the CWA prohibits "the

discharge of any pollutant by any person" without a permit or other authorization, 33 U.S.C.

§ 1311(a), to "navigable waters," defined as "the waters of the United States," *id*. at § 1362(7).

The Army Corps of Engineers first promulgated regulations defining "waters of the

United States" in the 1970s.  Covered waters included only those waters subject to the ebb and

flow of the tide or used "for purposes of interstate or foreign commerce."  39 Fed. Reg. 12,115,

12,119 (Apr. 3, 1974).  Thereafter, the Corps broadened its interpretation of the phrase.  *See, e.g*.,

42 Fed. Reg. 37,122, 37,144 (July 19, 1977).  In the 1980s, the Agencies adopted regulatory

definitions substantially similar to the 1977 definition; those regulations remained in effect until 2015. *See* 33 C.F.R. § 328.3(a) (1987) (Corps); 40 C.F.R. § 232.2(q) (1988) (EPA) (collectively, the "1986 Regulations"). Over time, the Agencies refined their application of the 1986 Regulations, as informed by three Supreme Court decisions. *See, e.g.*, *United States v. Riverside Bayview Homes*, 474 U.S. 121 (1985); *Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Eng'rs*, 531 U.S. 159 (2001); *Rapanos v. United States*, 547 U.S. 715 (2006).

In 2015, the Agencies comprehensively revised the regulatory definition of "waters of the United States." Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015) (the "2015 rule"). In 2019, the Agencies repealed the 2015 rule and reinstated the prior regulatory framework. 84 Fed. Reg. 56,626 (Oct. 22, 2019). In 2020, the Agencies again comprehensively revised the definition of "waters of the United States" with the NWPR.

### B.    The NWPR

The NWPR establishes four categories of jurisdictional waters: "(1) The territorial seas and traditional navigable waters; (2) tributaries of such waters; (3) certain lakes, ponds, and impoundments of jurisdictional waters; and (4) wetlands adjacent to other jurisdictional waters (other than waters that are themselves wetlands)." 40 C.F.R. § 120.2 (EPA); 33 C.F.R. § 328.3 (Corps); *see also* 85 Fed. Reg. at 22,273. The NWPR also establishes exclusions and defines the operative terms used in the regulatory text. 85 Fed. Reg. at 22,270; *see also id*. at 22,340–41 (regulatory text). The NWPR includes "perennial" tributaries that "flow[] continuously year-round" and "intermittent" tributaries that "flow[] continuously during certain times of the year and more than in direct response to precipitation (*e.g.*, seasonally when the groundwater table is elevated or when snowpack melts)." *Id*. at 22,338. Ephemeral waters (waters that flow in direct

response to precipitation) are categorically excluded from jurisdiction under the NWPR.  *Id*. at 22,340.

The NWPR also includes "adjacent wetlands" as subject to CWA jurisdiction if they directly abut a jurisdictional water, are "inundated by flooding" from a jurisdictional water during "a typical year," are separated from a jurisdictional water "only by a natural berm, bank, dune, or similar natural feature," or are separated from a jurisdictional water "only by an artificial dike, barrier, or similar artificial structure so long as that structure allows for a direct hydrologic surface connection" between the wetlands and the jurisdictional water in a "typical year."  *Id*. at 22,338.  Multiple parties have challenged the NWPR in various district courts.  *See* Status Report, ECF No. 107.

### C.     This Litigation

Plaintiffs filed their complaint on April 29, 2020, and amended their complaint on August 3, 2020.  ECF Nos. 1, 19.  Plaintiffs allege that the NWPR violates the APA for a variety of reasons, including that the Agencies failed to adequately consider water quality impacts and that the NWPR's exclusion of ephemeral streams and certain wetlands is arbitrary and capricious.  Am. Compl. ¶¶ 192–200, ECF No. 19.  In October 2020, the Sacketts intervened as defendants.  ECF Nos. 36, 40.  While contesting Plaintiffs' challenges to the NWPR, the Sacketts also allege that the NWPR adopted an unlawfully overbroad definition of "waters of the United States."  ECF No. 44, Affirmative Defenses.  On October 15, 2020, Plaintiffs moved for summary judgment and sought vacatur of the NWPR.  ECF Nos. 30–34.  On December 3, 2020, the Agencies cross-moved for summary judgment and opposed Plaintiffs' motion.  ECF Nos. 45–46.  The Sacketts also filed a summary judgment response.  ECF No. 47.  Plaintiffs' response and

reply was filed on February 16, 2021.  ECF No. 100.  The Agencies' reply brief is due today,

after two extensions.  ECF No. 106.

### D.   The Agencies' Review of the NWPR and Decision to Initiate New Rulemaking

The Agencies promulgated the NWPR to define the phrase "waters of the United States,"

which appears in Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7).  On January 20,

2021, following the presidential transition, President Biden issued Executive Order 13990,

entitled "Executive Order on Protecting Public Health and the Environment and Restoring

Science to Tackle the Climate Crisis."  86 Fed. Reg. 7037 (Jan. 25, 2021) ("EO 13990").  In

relevant part, EO 13990 states that it is the policy of the new administration

> to listen to the science; to improve public health and protect our environment; to ensure access to clean air and water; to limit exposure to dangerous chemicals and pesticides; to hold polluters accountable, including those who disproportionately harm communities of color and low-income communities; to reduce greenhouse gas emissions; to bolster resilience to the impacts of climate change; to restore and expand our national treasures and monuments; and to prioritize both environmental justice and the creation of the well-paying union jobs necessary to deliver on these goals.

*Id*. at 7037.  EO 13990 directs federal agencies to "immediately review and, as appropriate and

consistent with applicable law, take action to address the promulgation of Federal regulations

and other actions during the last 4 years that conflict with these important national objectives,

and to immediately commence work to confront the climate crisis."  *Id*.

Over the past few months, the Agencies have been reviewing the NWPR pursuant to EO

13990.  As explained in the attached declarations, the Agencies have now reviewed the NWPR

and have decided to initiate new rulemaking to define "waters of the United States."  Ex. 1,

Declaration of Radhika Fox ("Fox Decl.") ¶¶ 8–10; Ex. 2, Declaration of Jaime Pinkham

("Pinkham Decl.") ¶¶ 8–10.

## STANDARD OF REVIEW

Agencies have inherent authority to reconsider past decisions and to revise, replace, or

repeal a decision to the extent permitted by law and supported by a reasoned explanation. *FCC*

*v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009); *Motor Vehicle Mfrs. Ass'n v. State*

*Farm Mutual Auto. Ins. Co*., 463 U.S. 29, 42 (1983). Further, an agency's interpretation of a

statute it administers is not "carved in stone" but must be evaluated "on a continuing basis," for

example, "in response to . . . a change in administrations." *Nat'l Cable & Telecomm. Ass'n v.*

*Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) (internal quotation marks and citations

omitted). Voluntary remand is proper where an agency requests "a remand (without confessing

error) in order to reconsider its previous position." *SKF USA Inc. v. United States*, 254 F.3d

1022, 1029 (Fed. Cir. 2001); *Maine v. Wheeler*, No. 1:14-CV-00264-JDL, 2018 WL 6304402, at

*2 (D. Me. Dec. 3, 2018) (same). In other words, remand should be granted so long as "the

agency intends to take further action with respect to the original agency decision on review."

*Limnia, Inc. v. Dep't of Energy*, 857 F.3d 379, 381, 386 (D.C. Cir. 2017).

"Generally, courts only refuse voluntarily requested remand when the agency's request is

frivolous or made in bad faith." *California Communities Against Toxics v. U.S. E.P.A*., 688 F.3d

989, 992 (9th Cir. 2012) (granting remand and citing *SKF USA Inc.*, 254 F.3d at 1029); *see also*

*Limnia, Inc*., 857 F.3d at 386–87 (refusing remand where agency had no intention to revisit

challenged decision).

Voluntary remand is appropriate when the request is reasonable and timely. *See Macktal*

*v. Chao*, 286 F.3d 822, 826 (5th Cir. 2002); *see also Arizona Pub. Serv. Co. v. EPA*, 562 F.3d

1116, 1122 (10th Cir. 2009) (granting EPA's motion for voluntary remand).  In exercising its discretion to grant remand, a court may consider whether any party opposing remand would be unduly prejudiced.  *FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 73 (D.D.C. 2015).

**ARGUMENT**

Remand is proper in this case because the Agencies have completed their review of the NWPR and have decided to initiate new rulemaking to define "waters of the United States."  Fox Decl. ¶¶ 8–10; Pinkham Decl. ¶¶ 8–10.  Remand would also conserve judicial resources and would not unduly prejudice the parties.

**I.      The Agencies Have Established Grounds for Voluntary Remand.**

An agency may seek remand because it wishes to revisit its interpretation of the governing statute, the procedures it followed in reaching its decision, or the decision's relationship to other agency policies.  *SKF USA Inc.*, 254 F.3d at 1028–29.  The Agencies seek remand for these exact reasons.  The Agencies conducted a review of the NWPR.  Fox Decl. ¶ 10; Pinkham Decl. ¶ 10.  Through that review, the Agencies "have identified substantial concerns with the NWPR and have determined that additional consideration should be given to certain aspects of the NWPR through notice-and-comment rulemaking[.]"  *Id.*

Voluntary remand is appropriate because the Agencies have identified "substantial and legitimate concerns" with the NWPR and intend to embark upon a rulemaking process to replace the rule.  *SKF USA Inc.*, 254 F.3d at 1029 ("[I]f the agency's concern [with the challenged action] is substantial and legitimate, a remand is usually appropriate.").  The Agencies have explained that they have substantial concerns about certain aspects of the NWPR and the effects of the NWPR on the nation's waters, including whether the NWPR adequately considered the CWA's statutory objective in determining the scope of "waters of the United States" and, as a

7

result, whether the process adequately considered the effects of the NWPR on the integrity of the nation's waters.  Fox Decl. ¶¶ 10, 12; Pinkham Decl. ¶¶ 10, 12.  For example, the Agencies have identified concerns about whether sufficient consideration was given to the impact of the NWPR's categorical exclusion of ephemeral waters.  Fox Decl. ¶ 14; Pinkham Decl. ¶ 14.  In addition, the Agencies have noted on-the-ground effects of the NWPR since the rule went into effect, which reinforces their conclusion that a new rulemaking in which the Agencies will reconsider issues of concern with the NWPR and its impacts is warranted.  Fox Decl. ¶¶ 15–20; Pinkham Decl. ¶¶ 15–20.

Remand would give the Agencies an opportunity to fully explore and address these issues and the concerns of the parties and other stakeholders, through the administrative rulemaking process.  Fox Decl. ¶ 14; Pinkham Decl. ¶ 14.  Remand would also allow the Agencies to develop a new administrative record, which would benefit the Court and the parties if a new rule were to be litigated.  "[T]his kind of reevaluation is well within an agency's discretion," *Nat'l Assn of Home Builders v. EPA*, 682 F.3d 1032, 1038 (D.C. Cir. 2012) (citing *Fox Television Stations, Inc*., 556 U.S. at 514–15), and courts should allow it.  *See also Util. Solid Waste Activities Group v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018).

Moreover, deferring to the Agencies' new rulemaking process also promotes important jurisprudential interests.  "In the context of agency decision making, letting the administrative process run its course before binding parties to a judicial decision prevents courts from 'entangling themselves in abstract disagreements over administrative policies, and . . . protect[s] the agencies from judicial interference' in an ongoing decision-making process."  *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386–87 (D.C. Cir. 2012) (citation omitted).  Allowing the administrative process to run its course here will let the Agencies "crystalliz[e] [their] policy

before that policy is subjected to judicial review," *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999), and avoid "inefficient" and unnecessary "piecemeal review." *Pub. Citizen Health Research Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 30 (D.C. Cir. 1984) (citation and internal quotation marks omitted).

Courts have granted remand in similar situations.  In *SKF USA Inc.*, the Federal Circuit found a remand to the Department of Commerce appropriate in light of the agency's change in policy.  254 F.3d at 1025, 1030.  Likewise, in *FBME Bank Ltd.*, the District Court for the District of Columbia remanded a rule to the Department of the Treasury to allow the agency to address "serious 'procedural concerns,'" including "potential inadequacies in the notice-and-comment process as well as [the agency's] seeming failure to consider significant, obvious, and viable alternatives."  142 F. Supp. 3d at 73.

The Agencies are not requesting vacatur of the NWPR during the remand.  Vacatur "rests in the sound discretion of the reviewing court" and it depends on several factors, including (1) "the severity of the errors"; (2) "the likelihood that they can be mended without altering the [rule]"; and (3) "the balance of equities and public interest considerations."  *Cent. Maine Power Co. v. F.E.R.C.*, 252 F.3d 34, 48 (1st Cir. 2001).  In light of the Agencies' stated intent to address their substantial concerns with the NWPR through a new rulemaking, the Agencies request that the Court order a remand and are not including a request for vacatur.

## II.   Granting Remand Conserves Judicial Resources.

Granting remand here promotes judicial economy and conserves the parties' and the courts' resources.  Courts "have recognized that '[a]dministrative reconsideration is a more expeditious and efficient means of achieving an adjustment of agency policy than is resort to the federal courts.'"  *B.J. Alan Co. v. ICC*, 897 F.2d 561, 562 n.1 (D.C. Cir. 1990) (quoting

*Commonwealth of Pennsylvania v. ICC*, 590 F.2d 1187, 1194 (D.C. Cir. 1978)).  "Remand has

the benefit of allowing 'agencies to cure their own mistakes rather than wasting the courts' and

the parties' resources reviewing a record that both sides acknowledge to be incorrect or

incomplete.'"  *Util. Solid Waste*, 901 F.3d at 436 (quoting *Ethyl Corp. v. Browner*, 989 F.2d 522,

524 (D.C. Cir. 1993)).  Allowing the Agencies to proceed with a new rulemaking allows them to

address concerns with the NWPR through the administrative process.  The Agencies might

resolve the parties' concerns through that process, potentially rendering unnecessary future

litigation that could strain the courts' and parties' resources.  Remand would preserve those

resources.

In addition, continuing to litigate this case wastes the Agencies' and the parties' resources

in the present, resources that could be better spent on the rulemaking process.  Because many of

the issues presently before the Court will be re-evaluated in the Agencies' new rulemaking,

remand of the NWPR will allow the Agencies to focus their resources on the new rulemaking,

with input from the parties and other interested stakeholders.  Fox Decl. ¶ 14; Pinkham Decl.

¶ 14.  In particular, ongoing litigation could interfere with the Agencies' rulemaking, as the

Agencies would have to prioritize pending litigation deadlines.  *See Am. Forest Res. Council v.*

*Ashe*, 946 F. Supp. 2d 1, 43 (D.D.C. 2013) (because agency did "not wish to defend" the action,

"forcing it to litigate the merits would needlessly waste not only the agency's resources but also

time that could instead be spent correcting the rule's deficiencies.").

Although merits briefing is nearly complete, the Court need not resolve the competing

summary judgment motions nor consider the many *amicus curiae* briefs before it, ECF Nos. 30–

35, 45–47, 56, 68, 72–73, 80–81, 87, 89, as the Agencies' new rulemaking may render some or

all of the various disputes moot.  The Agencies' new rulemaking may fully address and resolve

the parties' concerns or, at least, narrow the issues if the parties were to challenge a new rule arising out of the new rulemaking. Even if remand does not resolve all of the claims presented by the parties, subsequent judicial review will likely turn on a new and different record that will necessarily alter the nature of this Court's review. Therefore, continuing to litigate the very same issues that the Agencies may resolve through a new rulemaking, "would be inefficient," *FBME Bank*, 142 F. Supp. 3d at 74, and a waste of judicial resources.

## III.   Remand Would Not Prejudice the Parties.

Remand would not prejudice any party. The Agencies intend to consider and evaluate issues raised in the various legal challenges to the NWPR during the rulemaking process, including arguments made by the parties in this case. Fox Decl. ¶¶ 8–10; Pinkham Decl. ¶¶ 8–10. As addressed above, the Agencies may revise or replace the NWPR in a way that resolves Plaintiffs' claims. For example, Plaintiffs claim that the Agencies did not adequately consider the CWA's statutory objective and arbitrarily excluded ephemeral waters and certain wetlands. Pls.' Mem. of Law at 18, 23–28, ECF No. 31. The Agencies intend to consider these very issues on remand. Fox Decl. ¶ 13; Pinkham Decl. ¶ 13. Through their rulemaking process, the Agencies will consider the policies set forth in EO 13990 and intend to ensure that "waters of the United States" is defined in a manner consistent with the CWA's statutory objective. In addition, the parties will have the opportunity to participate through the notice and comment process by submitting comments on any new proposed rule. Fox Decl. ¶ 10; Pinkham Decl. ¶ 10.

## CONCLUSION

The Agencies have identified numerous concerns with the NWPR, many of which have been raised by Plaintiffs in this case, and intend to evaluate those concerns through a new notice-

and-comment rulemaking.  Fox Decl. ¶¶ 9–20; Pinkham Decl. ¶¶ 9–20.  Where, as here, the Agencies have committed to reconsidering the challenged action, the proper course is remand to allow the Agencies to address their concerns through the administrative process.  The Agencies respectfully ask the Court to remand the NWPR, without vacatur, and to dismiss this case, rather than requiring the Agencies to litigate a rule that may be replaced.

Respectfully submitted this 9th day of June, 2021.

/s/ *Sarah Izfar*
JEAN E. WILLIAMS
*Acting Assistant Attorney General*
PHILIP R. DUPRÉ
SARAH IZFAR
KEVIN MCARDLE
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
4 Constitution Square
150 M Street, NE
Washington, DC 20002

Telephone (202) 305-0490
Facsimile (202) 514-8865
sarah.izfar@usdoj.gov

*Counsel for Defendants*

Of Counsel:

JAMES O. PAYNE
Deputy General Counsel
Environmental Protection Agency

ELISE M. O'DEA
Attorney-Advisor
Environmental Protection Agency

CRAIG R. SCHMAUDER
Senior Officer Performing Duties of General
Counsel
Department of Army

DAVID R. COOPER
Chief Counsel
U.S. Army Corps of Engineers
*Attorneys*

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2021, I electronically transmitted the foregoing to the Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to registered counsel for all parties.

*/s/ Sarah Izfar*