IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, et al., | Civil Action No. 1:20-cv-10820-DPW |
| Plaintiffs, | |
| v. | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| Defendants, | |
| CHANTELL SACKETT; MICHAEL SACKETT, | |
| Defendant-Intervenors. | |

**DEFENDANT-INTERVENORS THE SACKETTS' OPPOSITION
TO FEDERAL DEFENDANTS' MOTION FOR REMAND**

Defendant-Intervenors Chantell and Michael Sackett (the Sacketts) oppose the United States Environmental Protection Agency (EPA) and the United States Army's (Army) (together "the Agencies"), motion for voluntary remand to the extent it seeks remand of the "adjacent wetlands" provisions of the Navigable Waters Protection Rule (Rule).

The controversy in this case centers on the Agencies' decades-long attempt to define "navigable waters" within the meaning of the Clean Water Act. Plaintiffs Conservation Law Foundation, *et al.*'s (Plaintiffs) claims rest on the proposition that the Agencies engaged in discretionary decision-making when they adopted the adjacent wetlands definition in the Navigable Waters Protection Rule and that they abused that discretion in so acting. The Agencies respond that the Rule was an allowable exercise of agency discretion, entitled to deference under

1

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, and *National Cable & Telecommunications Association v. Brand X Internet Services*, and subject to revision in the future. Now, by asking the Court to remand the Rule to them, the Agencies ask this Court to affirm their claimed discretion to revise the definition of "navigable waters" (the fourth such revision in six years).

However, as to the Rule's definition of "adjacent wetlands," the Agencies have no such discretion. A plain reading of the text of the Clean Water Act, as authoritatively interpreted by the Supreme Court, precludes the Agencies from regulating wetlands that do not directly abut other regulable water bodies. The Agencies' decision to exclude most non-abutting wetlands in the Rule is compelled by the statute and is not a discretionary decision. Since this action was nondiscretionary, that provision of the Rule cannot be revised by the Agencies on remand, at least not to expand it. By seeking pre-merits remand of that provision, the Agencies seek to evade judicial review, effectively denying the Sacketts their right as parties to defend the adjacent wetlands definition Rule on its merits as compelled by the statute.

This Court need not and should not remand the entire Rule. Plaintiffs' motion for summary judgment is fully briefed as to the Rule's exclusion of non-abutting wetlands from Agency authority. And considering the Agencies' stated intention to revisit the adjacent wetlands provisions of the Rule on remand, that controversy remains live and in need of resolution. As such, this Court should exercise its discretion to deny remand of the Rule's adjacent wetlands definition and determine this question of statutory construction on the merits. For the same reasons, the Court should reject the Plaintiffs' request that the "adjacent wetlands" provisions of the Rule be vacated without adjudication on the merits.

## BACKGROUND

The following background of the Rule is necessary to evaluate the context of the Agencies' motion to remand.

### I. The Clean Water Act and the Agencies' Historic Failure to Define "Navigable Waters"

This case centers on EPA and the Army's decades-long attempt to define "navigable waters" as used in the Clean Water Act without violating the statute or the Constitution. That Act, 33 U.S.C. § 1251, *et seq.*, regulates discharges of "pollutants" from "point sources" to "navigable waters." 33 U.S.C. §§ 1311(a), 1362(12). The Act defines "navigable waters" as "waters of the United States, including the territorial seas." *Id.* § 1362(7). Although the Act defines "territorial seas," it does not otherwise define "waters of the United States." *Id.* § 1362(8).

Despite the need for a durable and legally sound definition of "navigable waters," there have been many failed attempts over the years. As a result, the scope of the Agencies' control over Americans' property has remained in a near constant state of flux. This is especially true of non-navigable wetlands. In 1986, the Army adopted a definition that stretched "navigable waters" to include all non-navigable wetlands "adjacent" (broadly defined as "bordering, contiguous, or neighboring") to any other regulated waters. *See* 33 C.F.R. § 328.3 (1987) (the 1986 Regulations); *id*. § 328.3(a)(7) & (c) (1987) (defining adjacent wetlands).

In 2006, a divided Supreme Court rejected this definition as exceeding the scope of the statutory term "navigable waters." *See Rapanos v. United States*, 547 U.S. 715, 739 (2006). In assessing the legality of the 1986 Regulations, a four-Justice plurality determined that the language, structure, and purpose of the Clean Water Act restrict federal authority over non-navigable wetlands to only those that physically abut relatively permanent and continuously flowing waters, with an immediate surface water connection making the wetland and water body

"indistinguishable." *Id.* at 755.

Justice Kennedy provided a fifth vote rejecting the 1986 Regulations' definition of "adjacent wetlands" as overbroad, joining the plurality in the judgment. But he proposed a broader interpretation of "navigable waters" than the plurality: the "significant nexus" test. *Id.* at 759 (Kennedy, J., concurring). Under this view, the government can regulate a non-abutting wetland if it significantly affects the physical, chemical, and biological integrity of a navigable-in-fact waterway. *Id.* at 779–80 (Kennedy, J., concurring). Wetlands may be analyzed under this standard either standing alone or in combination with features "similarly situated" within an otherwise undefined "region." *Id.* at 780 (Kennedy, J., concurring).

In 2015, after several years of effort to address *Rapanos*, EPA and the Army adopted new regulations redefining "navigable waters," including a new and very broad definition of "adjacent wetlands." 33 C.F.R. § 328.3 (2016); 80 Fed. Reg. 37,054 (June 29, 2015) (the 2015 Rule). Several lawsuits challenged the 2015 Rule. On August 21, 2019, the U.S. District Court for the Southern District of Georgia ruled on summary judgment that the 2015 Rule violated the Clean Water Act and permanently enjoined it. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336, 1382–83 (S.D. Ga. 2019). A short time later, partially in response to the decision in *Georgia v. Wheeler*, EPA and the Army published a regulation that repealed the 2015 Rule and readopted the 1986 Regulations. 84 Fed. Reg. 56,626 (Oct. 22, 2019) (the 2019 Repeal Rule).

## II. The Navigable Waters Protection Rule and the Exclusion of Non-Abutting Wetlands from Federal Authority

On April 21, 2020, EPA and the Army again redefined "navigable waters" by publishing the Navigable Waters Protection Rule, at issue in this case. 85 Fed. Reg. 22,250 (Apr. 21, 2020). This Rule defines "navigable waters" as comprising four separate categories: "the territorial seas," "tributaries," "lakes and ponds, and impoundments of jurisdictional waters," and "adjacent

wetlands," 33 C.F.R. § 328.3(a); lists features that are not "navigable waters," 33 C.F.R. § 328.3(b); and defines terms used in the operative text of the Rule, 33 C.F.R. § 328.3(c).[1] The Rule defines "adjacent wetlands," as wetlands that abut or are flooded by other regulated waters or are physically separated from such waters only by natural barriers or by permeable artificial barriers. 33 C.F.R. § 328.3(c)(1)(i)–(iv). The Rule excludes from federal authority most wetland features that do not directly abut other regulable water bodies. Many of these "excluded" wetlands were regulated under prior broader definitions of "adjacent wetlands." *Id.*

### III. This Lawsuit and the Briefing on the Merits

On April 29, 2020, Plaintiffs filed this lawsuit against the Agencies' adoption of the Navigable Waters Protection Rule. *See* ECF No. 1. On August 3, 2021, they filed an amended complaint. *See* ECF No. 19. Among other things, Plaintiffs allege that the Agencies' decision to exclude previously regulated non-abutting wetlands was an abuse of discretion. *See* ECF No. 19 ¶¶ 9, 100–101, 103, 115–117, 121, 137, 139–140. The Agencies answered Plaintiffs' amended complaint on August 17, 2020, *see* ECF No. 21, and filed a certified index to the administrative record on August 28, ECF No. 26.

Plaintiffs then filed their opening brief on summary judgment on October 15, 2020. *See* ECF Nos. 30–34. Shortly thereafter, on October 21, 2020, the Sacketts filed an unopposed motion to intervene. ECF No. 36. That motion was granted on October 28, 2020. ECF No. 40. The Sacketts—who have fought a fourteen-year battle with EPA over permission to build a house on

---

[1] Subsequent references to 33 C.F.R. § 328.3 and its subdivisions are, unless indicated otherwise, to the version published in the Federal Register on April 21, 2020, at 85 Fed. Reg. at 22,338–39, and the identical provisions at 40 C.F.R. § 120.2, published the same date at 85 Fed. Reg. at 22,340–41. 40 C.F.R. § 120.2(3)(i) corresponds to 33 C.F.R. § 328.3(c)(1). For ease of reference, and to demonstrate the severability of the portions of the Rule defining "adjacent wetlands," the Sacketts have attached a reproduction of the full text of 33 C.F.R. § 328.3, as Exhibit 1 to this filing.

their vacant residential lot in Priest Lake, Idaho—intervened to defend the Rule's definition of adjacent wetlands because that definition excludes their property. *See* ECF No. 36 at 2, 10–13; ECF No. 36-2 at 2–4, ¶¶ 7–13 (Declaration of Chantell Sackett).

The Agencies cross-moved for summary judgment and opposed Plaintiffs' motion for summary judgment on December 3, 2020. ECF Nos. 45–46. In that filing, the Agencies argued that the Rule (including its definition of "adjacent wetlands") is an allowable exercise of agency discretion entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) and *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005). *See* ECF No. 46 at 22–30.

The Sacketts filed a brief in opposition to Plaintiffs' motion for summary judgment on December 3, 2020. *See* ECF No. 47. In contrast to the Agencies, the Sacketts argued that Plaintiffs' claims as to the Rule's definition of "adjacent wetlands" must fail as a matter of law because the exclusion of non-abutting wetlands from federal regulation is not a matter of agency discretion. *See* ECF No. 47. Instead, the exclusion of these wetlands is *compelled* by a plain reading of the text of the Clean Water Act, as authoritatively interpreted by the Supreme Court— namely the controlling plurality opinion in *Rapanos*. *See* ECF No. 47 at 16–21.

On February 16, 2021, Plaintiffs filed a combined brief in opposition to the Agencies' cross-motion for summary judgment and in reply to the Agencies' and the Sacketts' oppositions to summary judgment. *See* ECF No. 100. Replying to the Sacketts, Plaintiffs argued that the *Rapanos* plurality is not controlling in the First Circuit and that the Agencies' discretion to regulate "adjacent wetlands" under the Act is therefore not limited to those directly abutting other regulated surface waters. *See* ECF No. 100 at 33–34. This concluded briefing on Plaintiffs' summary judgment motion.

Following two additional extensions of time, *see* ECF Nos. 99, 106, on June 9, 2021, the Agencies filed a Motion for Remand Without Vacatur in lieu of a reply brief in support of their cross-motion. *See* ECF No. 112. Plaintiffs' motion for summary judgment is fully briefed at this time.

## IV. Executive Order 13990 and the Agencies' Decision to Rewrite their Definition of "Navigable Waters" Yet Again

On January 20, 2021, while merits briefing was ongoing in this case, President Biden signed Executive Order 13990. *See* 86 Fed. Reg. 7037, 7037 (Jan. 25, 2021). Executive Order 13990 directs the heads of the Agencies to "review all existing regulations . . . promulgated . . . between January 20, 2017, and January 20, 2021," and "consider suspending, revising, or rescinding" any actions inconsistent with the policies of the new administration. *Id.* The Navigable Waters Protection Rule was identified for review under the Executive Order and the Agencies concluded that review on June 9, 2021. *See* ECF No. 113 at 5–6.

Following their review of the Rule under Executive Order 13990, the Agencies announced their intention (for the fourth time in six years) to rewrite the definition of "navigable waters." *See EPA, Army Announce Intent to Revise Definition of WOTUS*, EPA News Releases (June 9, 2021), https://www.epa.gov/newsreleases/epa-army-announce-intent-revise-definition-wotus. That announcement coincided with the Agencies' motion for voluntary remand without vacatur in this Court. *See* ECF No. 112. In support of that motion the Agencies submitted declarations describing the outcome of their review of the Rule. *See* ECF Nos. 113-1 (Declaration of Radhika Fox), 113-2 (Declaration of Jaime Pinkham). Pertinent to the controversy between Plaintiffs and the Sacketts, the Agencies expressed concern regarding the Rule's exclusion of previously regulated non-abutting wetland features and indicated an intention to revisit the Rule's definition of adjacent wetlands. *See* ECF Nos. 113-1 ¶¶ 17–18, 20 (Fox Decl.), 113-2 ¶¶ 17–18, 20 (Pinkham

Decl.). On June 23, 2021, Plaintiffs responded to the Agencies' motion for remand by partially opposing it and requesting an order vacating the entire Rule (including its definition of "adjacent wetlands"). *See* ECF No. 115.

## STANDARD OF REVIEW

Voluntary remand without vacatur is an equitable remedy that is within the sound discretion of the Court to grant or deny. *See Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 381 (D.C. Cir. 2017) ("A district court has broad discretion to decide whether and when to grant an agency's request for a voluntary remand"); *Maine v. Wheeler*, No. 1:14-cv-00264-JDL, 2018 WL 6304402 at *1 (D. Me. Dec. 3, 2018) ("District courts have broad discretion to grant or deny an agency's voluntary motion to remand."). The moving government party bears the burden of establishing the propriety of voluntary remand prior to a decision on the merits. *See Limnia*, 857 F.3d at 381. Three factors are worthy of this Court's consideration in exercising its discretion to grant or deny the Agencies' motion.

First, courts can and do refuse to grant voluntary remand in circumstances where to do so would be inappropriate. *See Lutheran Church-Missouri Synod v. Fed. Comm. Comm'n*, 141 F.3d 344, 349 (D.C. Cir. 1998) (denying motion for voluntary remand where remand would enable an agency to strategically avoid judicial review). *See also Assiniboine & Sioux Tribes of Fort Peck Indian Rsrv. v. Norton*, 527 F. Supp. 2d 130, 136 (D.D.C. 2007) (refusing to grant voluntary remand in part because, due to historic failures, the district court was not persuaded the moving agency would on remand resolve issues identified by the litigation or conform its conduct to statutory mandate); *Limnia*, 857 F.3d at 387 (finding voluntary remand inappropriate where the agency did not intend to "take further action with respect to the *original agency decision on review*" and remand would instead have "function[ed] . . . as a dismissal of a party's claims");

*Miss. River Transmission Corp. v. FERC*, 969 F.2d 1215, 1217 at n. 2 (D.C. Cir. 1992) (denying remand where a motion for remand was filed late in the judicial review process and without observance of proper procedure).

Second, a reviewing court may exercise its discretion to partially remand an agency action and partially adjudicate its merits. *See NTN Bearing Corp. of Am. v. United States*, 46 F. Supp. 3d 1375, 1382 (Ct. Int'l Trade 2015) (granting partial voluntary remand of an agency decision and adjudicating the merits of the remainder of plaintiff's claims); *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, No. C-09-4029 EMC, 2011 WL 3607790, at *5–6 (N.D. Cal. Aug. 16, 2011) (granting voluntary partial remand of one issue and setting a plan for adjudication of the non-remanded issues).

Third, where an agency believes its original decision was incorrect and its remand request is predicated on "a change in agency policy or interpretation," the way in which a court will exercise its discretion differs if the challenged agency action was either statutorily compelled or forbidden under *Chevron* Step One. *See SKF USA Inc. v. United States*, 254 F.3d 1022, 1029–30 (Fed. Cir. 2001). Although a reviewing court may still grant remand, it may also decide the statutory issue where the circumstances warrant. *See id.* This rule conforms to the First Circuit's approach to *Chevron*, *see Penobscot Air Servs., Ltd. v. Fed. Aviation Admin.*, 164 F.3d 713, 719 (1st Cir. 1999) ("if the legislative intent is clear, we do not defer to the agency . . . ), as well as to broader principles of administrative law, *cf. Social Sec. Bd. v. Nierotko*, 327 U.S. 358, 369 (1946) ("it is a 'judicial function'," and not an agency function, to decide the final "limits of its statutory power").

**ARGUMENT**

**I.    The Court *Need Not* Remand the Entire Rule in Response to the Agencies' Motion**

The Court need not remand the Navigable Waters Protection Rule in its entirety in response

to the Agencies' motion. This Court has wide latitude to grant or deny a motion for remand. *See Limnia*, 857 F.3d at 381; *Maine*, 2018 WL 6304402 at *1. And this discretion includes the latitude to partially remand an agency rule and partially adjudicate its merits. *See NTN Bearing Corp.*, 46 F. Supp. 3d at 1382; *Gonzales & Gonzales*, 2011 WL 3607790, at *5–*6. Under the circumstances of the present case, partial remand[2] and partial adjudication is especially appropriate.

The Court should not remand the entire rule, because the "adjacent wetlands" question has been fully briefed and is ready to be adjudicated on the merits. As noted above, one discrete aspect of the Rule is its definition of "adjacent wetlands" as wetlands that abut or are flooded by other regulated waters or are physically separated from such waters only by natural barriers or permeable artificial barriers. 33 C.F.R. § 328.3(c)(1). This definition—the fourth of four categories of waters identified as regulable in the text of the Rule—is severable from the remainder of the Rule. *See id*.

Plaintiffs alleged in their complaint and argued on summary judgment that this definition of "adjacent wetlands" was an abuse of discretion. *See* ECF No. 19 ¶¶ 9, 100–01, 103, 115–17, 121, 137, 139–40; ECF No. 31 at 30–34, 39–40. In opposing summary judgment, the Sacketts argued that Plaintiffs' claims as to the Rule's definition of "adjacent wetlands" must fail because the exclusion of non-abutting wetlands from federal regulation is not a matter of agency discretion but is instead compelled by the plain text of the Clean Water Act—as authoritatively interpreted by the controlling plurality opinion in *Rapanos*.[3] *See* ECF No. 47 at 16–21. Replying to the Sacketts, Plaintiffs argued that the *Rapanos* plurality opinion is not controlling and that the Agencies are free to exercise their discretion to regulate non-abutting wetlands under the Act. *See*

---

[2] The Sacketts take no position on remand of other portions of the Rule; their only interest is in the "adjacent wetlands" provisions of it.

[3] The Agencies have thus far defended the Rule as an exercise of their discretion and reject the Sacketts' argument that the adjacent wetlands definition in the Rule is legally compelled. *See* ECF No. 46 at 22–30.

ECF No. 100 at 33–34.

This legal question is fully briefed by the Plaintiffs and the Sacketts. And because the portion of the Rule excluding certain non-abutting wetlands does not bear upon any other provision of the Rule, this Court may exercise its discretion to adjudicate this aspect of Plaintiffs' case while remanding the remainder of the Rule.

## II. The Court *Should* Deny the Agencies Motion for Remand as to the Adjacent Wetlands Provisions of the Rule

Not only do the circumstances of this case *allow* the Court to deny remand of the Rule's definition of "adjacent wetlands," they counsel strongly *in favor* of doing so. Throughout this litigation, the Agencies have argued that the Rule's definition of "adjacent wetlands" is merely an exercise of agency discretion. *See* ECF No. 46 at 22–30. The Agencies now seek to exercise this claimed discretion by abandoning their defense of the Rule and again changing it to a broader definition of "adjacent wetlands." *See* ECF Nos. 113-1 ¶¶ 17–18, 20 (Fox Decl.), 113-2 ¶¶ 17–18, 20 (Pinkham Decl.). By moving for voluntary remand the Agencies implicitly ask this Court to prejudge the merits of the Sacketts' defense (i.e., whether the Rule's adjacent wetlands definition is discretionary or compelled) and affirm their discretion to include a wider portfolio of wetlands. The Court should reject this effort, for four reasons.

*First*, the extent of the Agencies' discretion to redefine "adjacent wetlands" is a live controversy to which the parties are entitled to a decision. The importance of a decision on this fully-briefed merits question is especially important now that the Agencies have indicated an intention to inflate the definition of "adjacent wetlands"—a move which the Sacketts argue would be illegal. *See* ECF No. 47 at 16–21. If the Sacketts are correct, the Agencies are not entitled to reconsider the definition of "adjacent wetlands" on remand because they do not have the discretion to do so. *Id*. As such, litigation over the extent to which the Clean Water Act compelled the

11

Agencies to exclude non-abutting wetlands from the Rule is far from "unnecessary." *See* ECF No. 113 at 1, 8–9. Instead, adjudicating the merits of this question cuts to the heart of what the Agencies are seeking.

Moreover, a decision on the merits of the Sacketts' defense of the Rule would properly guide the Agencies in their stated intent to revise the definition of "adjacent wetlands." If the Court agrees with the Sacketts that the *Rapanos* plurality controls and the exclusion of non-abutting wetlands was compelled, then the Agencies lack any discretion to expand the definition of "adjacent wetlands" on remand. On the other hand, if the Court agrees with the Plaintiffs that Justice Kennedy's "significant nexus" test is the controlling standard, *see* ECF Nos. 31 at 16, 100 at 33, this will likewise provide necessary guidance for the Agencies' exercise of discretion on remand. *See Rapanos* 547 U.S. at 759, 779–780 (Kennedy, J., concurring). Such guidance is especially important given the Agencies' historic failure to craft a durable and legally sufficient definition of "adjacent wetlands." *See supra* pp. 2–4. Indeed, at least one court has rejected a motion for voluntary remand where—among other reasons—considering the agency's historic failures, it was not convinced the moving agency would resolve issues identified by the litigation or conform its conduct to a statutory mandate on remand. *See Assiniboine & Sioux Tribes of Fort Peck Indian Rsrv.*, 527 F. Supp. 2d at 136.

*Second*, in the closely related situation where an agency believes its original decision was incorrect and its remand request is predicated on "a change in agency policy or interpretation," the exercise of the court's discretion will differ if the challenged agency action was statutorily compelled or forbidden under *Chevron* Step One. *See SKF*, 254 F.3d at 1029–30. In such scenarios, although a reviewing court still retains the discretion to grant remand, it may instead decide the statutory issue if the circumstances warrant. *See id.* The Sacketts have argued that the Agencies

exclusion of non-abutting wetlands is legally compelled by a plain reading of the text of the Clean Water Act. *See* ECF No. 47 at 16–21. Therefore, any analysis ends at *Chevron* Step One. *Id.* This Court should therefore exercise its discretion to "decide the statutory issue" instead of remanding that portion of the Rule. *See SKF*, 254 F.3d at 1029–30; *Penobscot Air Servs*, 164 F.3d at 719 ("if the legislative intent is clear, we do not defer to the agency . . . ."). *Cf. Nierotko*, 327 U.S. at 369 ("it is a 'judicial function'," and not an agency function, to decide the final "limits of its statutory power").

*Third*, the Agencies' argument that remanding without deciding the merits would conserve judicial resources and benefit the parties is unavailing and should be rejected, at least as to the "adjacent wetlands" provisions of the Rule. *See* ECF No. 113 at 2, 8, 10, 11. The Agencies argue in support of this contention that remand would permit the creation of a new administrative record and prevent needless litigation upon the current administrative record. *Id.* But the Sacketts claim the definition of "adjacent wetlands" is compelled by the Act. If they are correct, then the contents of the Rule's current administrative record, or any new administrative record that might be created on remand, is irrelevant to the question this Court has been asked to address. If the Sacketts are correct that the Agencies decision to exclude non-abutting wetlands from the definition of "navigable waters" is compelled by the Act, then remanding for the Agencies to compile a new administrative record would be a futile endeavor. *Cf. Union Pacific R.R. Co. v. U.S. Dep't of Homeland Sec.*, 738 F.3d 885, 901 (8th Cir. 2013) (refusing to remand an agency decision, because the agency had plainly exceeded its statutory authority, and a court "simply will not remand '[w]here application of the correct legal standard could lead to only one conclusion.'" (quoting *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010))); *George Hyman Const. Co. v. Brooks*, 963 F.2d 1532, 1539 (D.C. Cir. 1992) (refusing to remand to the agency where only "one disposition

13

is possible as a matter of law."). Here, there is nothing left for the Agencies to "crystallize." *See* ECF No. 113 at 8–9 (citing *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999)). The Sacketts raise a purely legal question of statutory construction and the Court should address that question now, before the Agencies waste any more time.

Indeed, as an illustration of this principle that a rulemaking record does not control similar questions of statutory construction, numerous courts have held that the *Chenery* doctrine—which provides that an agency may not defend an administrative decision on different grounds than those contained in the administrative record—is inapplicable where that decision was compelled by law. These cases hold that in performing its judicial function of resolving a pure question of statutory construction, a court should not be constrained by the conclusions contained in the administrative record compiled by an agency. *See, e.g.*, *Koyo Seiko Co. v. United States*, 95 F.3d 1094, 1099–1102 (Fed. Cir. 1996) (affirming a proceeding on grounds other than those in the agency's record and finding *Chenery* inapplicable where the "the sole issue is one of statutory construction," the "plain language of the statute compels the conclusion," and the conclusion does not "implicate the exercise of agency discretion."); *Ark. AFL-CIO v. Fed. Commc'ns Comm'n.*, 11 F.3d 1430, 1440 (8th Cir. 1993) (plurality opinion) (determining courts may find additional bases "for a correct legal result" beyond those offered by the agency because "the Supreme Court clearly limited *Chenery* to situations in which the agency failed to make a necessary determination of fact or of policy."); *Railway Labor Execs.' Ass'n v. Interstate Commerce Comm'n*, 784 F.2d 959, 969 (9th Cir. 1986) (holding *Chenery* is inapplicable where "the issue in dispute is the interpretation of a federal statute."); *N.C. Comm'n of Indian Affairs v. U.S. Dep't of Labor,* 725 F.2d 238, 240 (4th Cir. 1984), *cert. denied,* 469 U.S. 828 (4th Cir. 1984) (finding no "*Chenery* problem . . . because the question of interpretation of a federal statute is not 'a determination or judgment which an

administrative agency alone is authorized to make.'" (quoting *Securities and Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (*Chenery II*)).

*Fourth*, affirming the Agencies' discretion and remanding the adjacent wetlands provisions of the Rule without deciding the merits would effectively deny the Sacketts their defense of the Rule. The Agencies are incorrect that pre-merits remand would not prejudice the other parties. *See* ECF No. 113 at 11. The Sacketts intervened to establish that the exclusion of non-abutting wetlands—including those alleged to exist on their property—was compelled by law. *See* ECF No. 36 at 2, 10–13. But remanding the Rule for the Agencies to impose a broader definition of "adjacent wetlands" permits the Agencies to evade judicial review of the scope of their discretion to redefine "adjacent wetlands." This is not an "abstract disagreement over administrative polic[y]." *See* ECF No. 113 at 8–9. It has a real effect on the concrete interests the Sacketts have sought to vindicate in this litigation—their right to use their private property without the United States Army's permission. *See* ECF No. 36 at 2, 10–13 (alleging significant concrete interests in the adjudication of the legality of the "adjacent wetlands" provisions); ECF No. 40 (granting intervention to the Sacketts on the basis of those interests); ECF No. 47 at 25–26 (arguing on summary judgment that the Sacketts have independently established standing to defend the adjacent wetlands provisions of the Rule); ECF No. 47-3 ¶¶ 18–20 (Sackett Decl.) (alleging significant personal harm should the Agencies return to the illegally overbroad "adjacent wetlands" definition in effect prior to the adoption of the Rule). Courts have denied motions for voluntary remand where granting the motion would prejudicially allow an agency to evade judicial review. *See Lutheran Church-Missouri Synod*, 141 F.3d at 349.[4]

---

[4] In litigation on an agency rulemaking record, as well as in scenarios where agency action is compelled, remand to the agency is not inevitable, so voluntary remand will significantly impair the judicial review rights of the parties. *Cf.* Joshua Revesz, *Voluntary Remands: A Critical*

As such, this Court should deny the Agencies' motion as to the "adjacent wetlands" provisions of the Rule, and instead decide Plaintiffs' motion for summary judgment on that issue.

### III. This Court Should Reject the Plaintiffs' Request for Vacatur and Treat it as a Request for Adjudication on the Merits

Finally, this Court should reject Plaintiffs' request for pre-merits vacatur. *See* ECF No. 115. Given the way Plaintiffs couch their request, the Court should treat it functionally as a request to adjudicate the merits of their claims.

In partially opposing the Agencies' motion, Plaintiffs request this Court grant them complete relief, without first adjudicating the merits. *See id.* However, other courts have rejected similar requests on the grounds that doing so circumvents the notice and comment requirements of the APA and affords relief without due consideration of the merits. *See Nat'l Parks Conservation Ass'n v. Salazar*, 660 F.Supp.2d 3, 5 (D.D.C. 2009) ("granting vacatur here would allow the Federal defendants to do what they cannot do under the APA, repeal a rule without public notice and comment, without judicial consideration of the merits."); *Maine*, No. 2018 WL 6304402, at *3 (finding that the First Circuit "has yet to address whether it is within a district

---

*Reassessment*, 70 Admin. L. Rev. 361, 403 (2018); *George Hyman Const. Co. v. Brooks*, 963 F.2d 1532, 1539 (D.C. Cir. 1992). If the merits are adjudicated and the Rule is either vacated (as requested by the Plaintiffs) or upheld as compelled (as requested by the Sacketts) it *will not* be remanded to the agency. However, the framework for voluntary remand—established in the context of the formal adjudication widely prevalent in prior eras of administrative law—generally approaches the problem as if remand is inevitable (as it generally is in the context of review of formal adjudication). *See* Revesz, *supra*, at 403. It therefore treats most voluntary agency remand requests as a mere "question of timing." *Id*. But in the context of judicial review of agency *rulemaking* "the choice between voluntary remand and litigating on the merits is not merely a question of timing" but is instead "a question of what remedy" private parties to the action will receive. *Id.* For this reason, in applying the voluntary remand doctrine, this Court "should be . . . attentive to private parties' [such as the Sacketts'] rightful position." *Id. See also*, Toni M. Fine, *Agency Requests for "Voluntary" Remand: A Proposal for the Development of Judicial Standards*, 28 Ariz. St. L.J. 1079, 1092–93, 1119 (1996) (framing the discussion in terms of the "[i]mportance [o]f [j]udicial [r]eview [f]unction" and noting that "the rights of intervenors warrant special attention in th[e] context" of an opposed motion for voluntary remand).

court's jurisdiction to vacate an agency's decision without first deciding the merits," and refusing to vacate a rule because "vacatur would allow for the 'repeal [of] a rule without public notice and comment [and] without judicial consideration of the merits.'" (quoting *Nat'l Parks Conservation Ass'n*, 660 F. Supp. 2d at 5.)).[5]

Plaintiffs acknowledge that courts are reluctant to enter the total relief afforded by vacatur without first adjudicating the merits. ECF No. 115 at 4 n.1. But somewhat contradictorily Plaintiffs assert that they are "not ask[ing] this Court to vacate in disregard of the Rule's merits." ECF No. 115 at 4 n.1.

Plaintiffs' response should be taken for what it is in all but name, a request to adjudicate the merits of their claims on summary judgment. As noted above, Plaintiffs' motion has been fully briefed. The Court has before it the Plaintiffs' motion for summary judgment, ECF Nos. 30–34, the Agencies[6] and the Sacketts' briefs in opposition to summary judgment, ECF Nos. 46–47, and the Plaintiffs' reply in support of summary judgment, ECF No. 100. The Court can adjudicate the merits of Plaintiffs' claims—at least as they pertain to the Rule's definition of "adjacent wetlands"—and move on to entering an appropriate remedy.

---

[5] Moreover, a live dispute still exists between the parties to this case. The cases cited by Plaintiffs in support of their request for vacatur prior to an adjudication on the merits are therefore distinguishable. *See, e.g.*, *Bldg. Indus. Legal Def. Found v. Norton*, 231 F. Supp. 2d, 100, 104-05 (D.D.C. 2002) (finding that the dispute between the parties no longer existed because all agreed that the challenged agency action was based on a flawed interpretation); *Ctr. For Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1239 (D. Colo. 2011) (vacating and remanding after the Solicitor of the United States Department of Interior withdrew the legal opinion underlying the challenged action and the agency asked for remand in light of two federal court orders holding that opinion was flawed); Order, *Farmworker Ass'n of Fla. v. EPA*, No. 21-1079 (D.C. Cir. June 7, 2021) (vacating and remanding after the agency acknowledged the illegality of its actions).

[6] Despite moving for voluntary remand without vacatur, the Agencies have not withdrawn their summary judgment briefing.

## CONCLUSION

The Agencies' motion for voluntary remand without vacatur should be denied as to the severable "adjacent wetlands" provisions of the Rule.

DATED: June 23, 2021.

Respectfully submitted,

/s/ Anthony L. François
ANTHONY L. FRANÇOIS*
Cal. Bar No. 184100
CHARLES T. YATES*
Cal. Bar No. 327704
Pacific Legal Foundation
930 G Street
Sacramento, CA 95814
Telephone: (916) 419-7111
Email: afrancois@pacificlegal.org
Email: cyates@pacificlegal.org

MATTHEW L. FABISCH (BBO 673821)
Fabisch Law Offices
664 Pearl St.
Brockton, MA 02301
Telephone: (401) 324-9344
Fax: (401) 354-7883
Email: Fabisch@Fabischlaw.com

*Attorneys for Defendant-Intervenors
Chantell and Michael Sackett*
* *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 23, 2021, I filed and thereby caused the foregoing document to be served via the CM/ECF system in the United States District Court for the District of Massachusetts on all parties registered for CM/ECF in the above-captioned matter.

/s/ Anthony L. François<br>
ANTHONY L. FRANÇOIS